HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WINDY PAYNE, individually and as Guardian on behalf of DYLAN PAYNE, a minor child,<br><br>Plaintiffs,<br><br>v.<br><br>PENINSULA SCHOOL DISTRICT, a municipal corporation; ARTONDALE ELEMENTARY SCHOOL, a municipal corporation; JODI COY, in her individual and official capacity; JAMES COOLICAN, in his individual and official capacity; and JANE and JOHN DOES 1-10,<br><br>Defendants. | Case No. C05-5780 RBL<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on Defendants Peninsula School District, Jodi Coy, and James Coolican's motion for summary judgment. [Dkt. #20]. Defendants seek a ruling as a matter of law that: 1) Plaintiffs failed to exhaust their administrative remedies under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*; 2) the Eighth Amendment is inapplicable to punishments in school settings; 3) plaintiffs' Fourteenth Amendment claim is more properly viewed as a Fourth Amendment claim; and 4) there is insufficient evidence that James Coolican, Peninsula School District's Superintendent, violated plaintiffs' constitutional rights. Because the failure to exhaust

administrative remedies deprives the Court of subject matter jurisdiction, the case must be dismissed without prejudice.

## II. BACKGROUND

The following facts are set forth in a light most favorable to plaintiffs:

Dylan Payne is a seven-year old developmentally disabled child who attended Artondale Elementary during the 2003-2004 school year. Peninsula School District placed Dylan in the Transition Program, a class designed to educate children with low cognitive skills and behavioral difficulties. Peninsula School District hired Jodi Coy to teach the Transition Program even though she possessed no teaching experience or valid teaching certificate with special education endorsement.

Included within Ms. Coy's classroom is a "safe room," a 63-inch by 68-inch area enclosed by carpeted walls extending eight feet high. The Paynes authorized Ms. Coy to place Dylan in the safe room, but only as a time-out space, not a place for punishment. The Paynes did not authorize the safe room door to be shut while Dylan was inside.

Ms. Coy began locking Dylan inside the safe room. Dylan became fearful and routinely urinated and defecated upon himself. Dylan experienced emotional and scholastic setbacks due to his experiences in the safe room. He verbally protested going to school, he suffered nightmares, and began to wet his bed and chew holes through his clothes.

During the fall of 2003, Mrs. Payne sat in on Dylan's classes to ensure his safety and attempt to have Ms. Coy understand Dylan's behavior and ways of communication. Peninsula School District reacted negatively to Mrs. Payne's involvement. Dylan was routinely not allowed to participate in activities outside the classroom with his peers. Ms. Coy also made it more difficult for Mrs. Payne to observe Dylan's classroom. Finally, the Peninsula School District arranged to terminate Phil Blackledge, Dylan's after-school tutor, after he provided opinions regarding the appropriateness of Dylan's curriculum and activities.

In January 2004, the Paynes complained about Ms. Coy's actions to Peninsula School District's administration. While the Paynes went through mediation with Peninsula School District to resolve issues with Dylan's behavioral problems and the school's response, they never went through an impartial due process hearing. The Paynes filed their complaint in District Court on December 2, 2005.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## IV. DISCUSSION

### A. The IDEA Background

The IDEA is a comprehensive educational scheme enacted to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." *See Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992); 20 U.S.C. § 1400(d)(1)(A). Under the IDEA, state or local educational agencies can receive federal funding to assist them in educating disabled children. To receive this funding, state and local educational agencies must ensure that children with disabilities - and their parents - are guaranteed specified procedural safeguards with regard to the provision of free appropriate public education by the agencies. 20 U.S.C. § 1415(a).

These safeguards include the right to have complaints resolved at a full adversary hearing before an impartial hearing officer, under the auspices of the relevant state or local educational agency, in connection with the "identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1). The IDEA permits aggrieved parties who are dissatisfied with the outcome of the administrative process to "bring a civil

ORDER
Page - 3

action with respect to the complaint presented [to the agency], either in state court or in federal district court." 20 U.S.C. § 1415(i((2)(A).

Although the IDEA does not "restrict or limit the rights, procedures, and remedies available under the Constitution... [or] title V of the Rehabilitation Act of 1973 ... or other Federal laws protecting the rights of children with disabilities," exhaustion of administrative remedies under the IDEA is required "before the filing of a civil action under such laws seeking <u>relief that is also available under</u>" the IDEA. *See* 20 U.S.C. § 1415(l),

The purpose of the exhaustion requirement under the IDEA is to permit educational agencies to have "primary responsibility for the educational programs that Congress has charged them to administer," to ensure that federal courts "are given the benefit of expert fact-finding by a state agency devoted to this very purpose," and to promote "judicial efficiency by giving those agencies the first opportunity to correct shortcomings in their educations programs for disabled students." *See Robb v. Bethel Sch. Dist.*, 308 F.3d 1047, 1051 (9th Cir. 2002). If a plaintiff fails to exhaust administrative remedies under the IDEA, federal courts are without jurisdiction to hear the plaintiff's claim. *See Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1274 (9th Cir. 1999).

**B.   Exhaustion**

Defendants argue plaintiffs' claims should be dismissed because they failed to exhaust their administrative remedies under IDEA. [Dkt. #20 at 5]. Plaintiffs respond that they are not required to exhaust their administrative remedies because the monetary damages and injunctive relief they seek are not available under the IDEA. [Dkt. #29 at 10].

A plaintiff cannot avoid the IDEA's exhaustion requirement simply by limiting a prayer for relief to money or services that are not provided under the IDEA. *See Robb*, 308 F.3d at 1049. The dispositive question therefore is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. *See id.* at 1050. "If so, exhaustion of those remedies is required." *Id.* "If not, the claim necessarily falls outside the IDEA's scope, and exhaustion is unnecessary." *Id.* "Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required to give educational agencies an initial opportunity to ascertain and alleviate the alleged

problem." *Id.* Exhaustion of administrative remedies under IDEA is not required "where resort to the administrative process would be either futile or inadequate." *See Hoeft*, 967 F.2d at 1303.

Here, plaintiffs seek monetary damages and injunctive relief. They also seek "general damages for extreme mental suffering and emotional distress" and claim defendants' actions caused Dylan's academic prowess and abilities to be diminished. [Dkt. #1 at 6, 9]. The Ninth Circuit has expressly rejected the contention that a claim for damages for "emotional distress, humiliation, embarrassment, and psychological injury" is not subject to the IDEA's exhaustion requirement. *See Robb*, 308 F.3d at 1050. "The IDEA requires a school district to provide not only education but also 'related services,' including . . . 'psychological counseling for children and parents.'" *See id.* (quoting 20 U.S.C. § 1041(22) and 34 C.F.R. § 300.24(b)(9)(v)). "This battery of educational, psychological, and counseling services could go a long way to correct past wrongdoing by helping [a plaintiff] to heal psychologically and to catch up with [his] peers academically." *Id.* "It would be inappropriate for a federal court to short-circuit the local school district's administrative process based on the possibility that some residue of the harm [plaintiff] allegedly suffered may not be fully remedied by the services Congress specified in the IDEA." *Id.*

Plaintiffs argue that *Witte v. Clark County Sch. Dist.* excuses the need to exhaust administrative remedies. This Court disagrees. In *Witte*, a plaintiff seeking monetary relief for alleged past physical and emotional abuse by school staff was not required to exhaust administrative remedies under the IDEA because "all educational issues already have been resolved to the parties' mutual satisfaction through the [administrative] process." 197 F.3d at 1275. Here, not only did Mrs. Payne testify that the situation never resolved itself after mediation, but also plaintiffs never went through an impartial due process hearing to resolve their issues.

As defendants correctly point out, the present facts more strongly resemble *Robb v. Bethel School District*. In *Robb*, a student with cerebral palsy and her parents sought damages for lost educational opportunities, emotional distress, humiliation, embarrassment, and psychological injury after the student was removed from the classroom for extending tutoring. 308 F.3d at 1048. The Ninth Circuit stated that *Robb*

> is a good example of why parents should not be permitted to opt out of the IDEA simply by making a demand for money or services the IDEA does not provide . . . . Why do they want this money? Presumably at least in part to pay for services (such as counseling and tutoring) that will assist their daughter's recovery of self-

ORDER
Page - 5

esteem and promote her progress in school. Damages could be measured by the cost of these services. Yet the school district may be able (indeed, may be obliged) to provide these services *in kind* under the IDEA.

*Id.* at 1050. The Ninth Circuit held that, because plaintiffs' injuries could be remedies to some degree by the IDEA's administrative procedures and remedies, the plaintiffs must exhaust those administrative remedies before filing suit. *Id.* at 1054.

Given plaintiffs' failure to exhaust their administrative remedies under the IDEA, the Court finds it lacks subject matter jurisdiction over federal claims that should be exhausted under the IDEA and will dismiss said claims without prejudice. As there is no independent basis for jurisdiction over plaintiffs' state law claims, the Court declines to exercise supplemental jurisdiction and will dismiss the state law claims without prejudice as well.

All other pending motions are **DENIED AS MOOT** [Dkt. Nos. 34, 58 and 70].

**IT IS SO ORDERED.**

DATED this 12th day of January, 2007.

RONALD B. LEIGHTON
UNITED STATES DISTRICT COURT JUDGE