**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

WINDY PAYNE, individually and as guardian on behalf of D.P., a minor child,

*Plaintiff-Appellant,*

v.

PENINSULA SCHOOL DISTRICT, a municipal corporation; ARTONDALE ELEMENTARY SCHOOL, a municipal corporation; JODI COY, in her individual and official capacity; JAMES COOLICAN, in his individual and official capacity; JANE DOES 1-10; and JOHN DOES 1-10,

*Defendants-Appellees.*

No. 07-35115

D.C. No.
CV-05-05780-RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
December 15, 2010—Pasadena, California

Filed July 29, 2011

Before: Alex Kozinski, Chief Judge,
Diarmuid F. O'Scannlain, Barry G. Silverman,
Susan P. Graber, M. Margaret McKeown,
Raymond C. Fisher, Johnnie B. Rawlinson, Jay S. Bybee,
Consuelo M. Callahan, Carlos T. Bea, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Bybee;
Concurrence by Judge Callahan;
Partial Concurrence and Partial Dissent by Judge Bea

**COUNSEL**

Thomas B. Vertetis, Pfau Cochran Vertetis Kosnoff, PLLC, Tacoma, Washington, for the plaintiff-appellant.

Michael A. Patterson, Patterson Buchanan Fobes Leitch & Kalzer, Inc., P.S., Seattle, Washington, for the defendants-appellees.

Sasha Samberg-Champion, United States Department of Justice, Civil Rights Division, Washington, D.C.; and Lenore Silverman, Fagen Friedman & Fulfrost, LLP, Oakland, California, for amici curiae.

## OPINION

BYBEE, Circuit Judge:

We agreed to rehear this case en banc to clarify under what circumstances the IDEA's exhaustion requirement bars non-IDEA federal or state law claims.

Appellant Windy Payne, on behalf of herself and her son, D.P., appeals the district court's grant of summary judgment to the defendants. The district court dismissed her claim for lack of subject matter jurisdiction because Payne did not initially seek relief in a due process hearing and therefore failed to comply with one of the exhaustion-of-remedies requirement of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(*l*). We hold that (1) the IDEA's exhaustion requirement is not jurisdictional, and (2) Payne's non-IDEA federal and state-law claims are not subject to the IDEA's exhaustion requirement. We therefore reverse.

I

The facts in this case, and the inferences to be drawn from them, are vigorously contested by the parties. Because Payne is appealing an adverse grant of summary judgment, we review this case de novo and state the facts in the light most favorable to her case, *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004), although we outline only the facts material to our decision.

D.P. is a minor who was diagnosed with oral motor apraxia and autism when he was five years old. During the 2003-04 school year, when D.P. was seven, he was placed in a contained special education classroom within Artondale Elementary School, part of the Peninsula School District. Defendant Jodi Coy was his teacher that year. Coy employed a small room about the size of a closet as a time-out room or "safe room" for students who became "overly stimulated."

At a meeting to discuss D.P.'s Individual Education Program ("IEP")[1] and Behavior Assessment Plan, Coy requested permission to use the time-out room while the IEP paperwork was pending. The Paynes initially objected, claiming that their son was unable to perceive a difference between positive and negative reinforcement. They eventually gave limited consent to the time-out room, specifying that they would agree to allow Coy to use the room for time-out periods only (and not punishment), but that the door had to remain open and that D.P. was not to be left alone inside the room. According to Payne, Coy nonetheless used the room to punish D.P. and locked him in the closet a number of times without supervision. In some instances, D.P. responded by removing his clothing and urinating or defecating on himself. Although the Paynes repeatedly requested that Coy stop using her "aversive therapy" techniques, Coy continued. Eventually, in January 2004, Coy refused to allow the Paynes to visit her classroom or pick up their son directly from the classroom, insisting that the Paynes might misinterpret what they observed.

The Paynes and the school district underwent mediation, and they agreed that D.P. would transfer to another school in the district. Later, the Paynes removed D.P. from the public school system and began home schooling him. They never underwent a formal due process hearing with the school district.

In 2005, Windy Payne filed the current complaint on behalf of herself and her son, seeking relief under 42 U.S.C. § 1983 by alleging violations of the Fourth, Eighth, and Fourteenth Amendments, and the IDEA. The complaint also advanced negligence and outrage claims under Washington law. The

---

[1]States participating in the IDEA are required to provide students with disabilities with an IEP in furtherance of the statute's goal of providing each such student with a "free appropriate public education." 20 U.S.C. § 1412(a)(1)(A), (a)(4). The IEP must meet a number of requirements, articulated in 20 U.S.C. § 1436(d).

defendants moved for summary judgment, claiming that
Payne had failed to exhaust her remedies as required by 20
U.S.C. § 1415(*l*) by failing to go through the informal due
process hearing and appeal process established by 20 U.S.C.
§ 1415(f), (g). The district court dismissed Payne's entire
case, citing our decision in *Robb v. Bethel School District #
403*, 308 F.3d 1047 (9th Cir. 2002), where we held that the
IDEA's exhaustion requirement applied to any case in which
"a plaintiff has alleged injuries that could be redressed to any
degree by the IDEA's administrative procedures and reme-
dies." *Id.* at 1048.

Payne timely appealed. In a divided decision, a panel of
this court affirmed the district court's grant of summary judg-
ment. *Payne v. Peninsula Sch. Dist.*, 598 F.3d 1123 (9th Cir.
2010), *reh'g en banc granted*, 621 F.3d 1001 (9th Cir. 2010).
The majority began by noting that the applicability of
§ 1415(*l*) depended on whether each claim more closely
resembled the one in *Robb*, in which we held that exhaustion
was required, or the one in *Witte v. Clark County School Dis-
trict*, 197 F.3d 1271 (9th Cir. 1999), in which we held that
exhaustion was not required. *Payne*, 598 F.3d at 1126-27. The
panel concluded that "this case is more akin to *Robb*" because
Payne had failed to seek an impartial due process hearing
after mediation failed, was seeking redress for academic inju-
ries "for which IDEA provides some relief," and was "not
claiming physical injuries for D.P. within the meaning of
*Witte*." *Payne*, 598 F.3d at 1127-28. Accordingly, the panel
concluded that "as an educational strategy (even if a mis-
guided or misapplied one), [Coy's use of the safe room] was
better addressed initially by the administrative process" and
affirmed the district court. *Id.* at 1128. Judge Noonan dis-
sented on the ground that "[t]he facts in this case are closer
to those in [*Witte*] than in [*Robb*]" and that "full exhaustion
of the IDEA administrative processes [was not] required." *Id.*
at 1128-29 (Noonan, J., dissenting).

On a vote of the majority of nonrecused active judges on
our court, we vacated the panel opinion and agreed to rehear

this case en banc. *Payne v. Peninsula Sch. Dist.*, 621 F.3d 1001 (9th Cir. 2010) (order granting rehearing en banc).

## II

We begin by clarifying the nature of the IDEA's exhaustion requirement. Adhering to this circuit's precedent, the original panel treated the requirement as a jurisdictional one, but questioned the soundness of this conclusion. *See Payne*, 598 F.3d at 1124-25 & n.2. Indeed, the conclusion it reached was consistent with our precedent. *See, e.g.*, *Blanchard v. Morton Sch. Dist.*, 420 F.3d 918, 920-21 (9th Cir. 2005) ("If a plaintiff is required to exhaust administrative remedies but fails to do so, the federal courts do not have jurisdiction to hear the plaintiff's claim."); *Witte*, 197 F.3d at 1274 (same). In light of a spate of Supreme Court cases clarifying the difference between provisions limiting our subject matter jurisdiction, which cannot be waived and must be pled in the complaint, and "claims processing provisions," which must be pled as an affirmative defense or forfeited, *see, e.g.*, *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202-07 (2011); *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1243-48 (2010); *see also United States v. Jacobo Castillo*, 496 F.3d 947 (9th Cir. 2007) (en banc), we now overrule our previous treatment of § 1415(*l*) and hold that the IDEA's exhaustion requirement is a claims processing provision that IDEA defendants may offer as an affirmative defense.

Federal courts may only decide cases over which they have both constitutional and statutory jurisdiction. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701-02 (1982). The Constitution grants federal courts jurisdiction over "all Cases, in Law and Equity, arising under this Constitution [and] the Laws of the United States." U.S. CONST. art. III, § 2, cl. 1. Here, Payne raised federal claims under 42 U.S.C. § 1983 in addition to a number of state-law claims. In cases such as this one, district courts have statutory jurisdiction over federal claims, 28 U.S.C. § 1331, and sup-

plemental jurisdiction over related state-law claims, 28 U.S.C.
§ 1367. Additionally, Congress has given us statutory authoriza-
tion to hear "appeals from all final decisions of the district
courts of the United States." 28 U.S.C. § 1291. It is clear,
then, that unless Congress has limited this jurisdiction further,
the federal courts have jurisdiction over IDEA-related mat-
ters.

**[1]** The IDEA's exhaustion requirement provides:

> Nothing in this chapter shall be construed to restrict
> or limit the rights, procedures, and remedies avail-
> able under the Constitution, the Americans with Dis-
> abilities Act of 1990 [42 U.S.C. § 12101 et seq.],
> title V of the Rehabilitation Act of 1973 [29 U.S.C.
> § 791 et seq.], or other Federal laws protecting the
> rights of children with disabilities, *except that before
> the filing of a civil action under such laws seeking
> relief that is also available under this subchapter,
> the procedures under subsections (f) and (g) shall be
> exhausted to the same extent as would be required
> had the action been brought under this subchapter.*

20 U.S.C. § 1415(*l*) (emphasis added). The Fourth and Eighth
Circuits share our earlier assumption that this language
creates a jurisdictional limitation. *See, e.g.*, *MM ex rel. DM v.
Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 536 (4th Cir.
2002) ("The failure of the Parents to exhaust their administra-
tive remedies . . . deprives us of subject matter jurisdiction
over those claims . . . ."); *Urban by Urban v. Jefferson Cnty.
Sch. Dist. R-1*, 89 F.3d 720, 725 (10th Cir. 1996) ("We con-
clude that the district court correctly dismissed the [unex-
hausted] claims for lack of jurisdiction."). By contrast, the
Seventh and Eleventh Circuits have treated the exhaustion
requirement as an affirmative defense, rather than a jurisdic-
tional requirement. *See, e.g.*, *Mosely v. Bd. of Educ.*, 434 F.3d
527, 533 (7th Cir. 2006) ("A failure to exhaust is normally
considered to be an affirmative defense, and we see no reason

to treat it differently here." (citation omitted)); *N.B. by D.G. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996) (per curiam) ("The exhaustion requirement . . . is not jurisdictional . . . .").

Last Term, the Supreme Court reminded us that "the word 'jurisdiction' has been used by courts . . . to convey 'many, too many, meanings' " and "cautioned . . . against profligate use of the term." *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 130 S. Ct. 584, 596 (2009) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998)). "Accordingly, the term 'jurisdictional' properly applies only to 'prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction)' implicating [the court's adjudicatory] authority." *Reed Elsevier*, 130 S. Ct. at 1243 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). The Court confessed that "[w]hile perhaps clear in theory, the distinction between jurisdictional conditions and claim-processing rules can be confusing in practice," that we should "us[e] the term 'jurisdictional' only when it is apposite," and that we should "curtail . . . 'drive-by jurisdictional rulings.' " *Id.* at 1243-44 (quoting *Steel Co.*, 523 U.S. at 91); *see also Henderson*, 131 S. Ct. at 1202-07 (holding that a veteran's failure to file a notice of appeal within the required 120-day period did not deprive the Court of Veterans Appeals of jurisdiction over his claim); *Reed Elsevier*, 130 S. Ct. at 1249 (holding that a copyright-registration requirement was not jurisdictional); *Union Pac. R.R.*, 130 S. Ct. at 598-99 (holding that a settlement-conference requirement was not jurisdictional); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514-15 (2006) (holding that a Title VII provision exempting employers with fewer than 15 employees was not jurisdictional); *Kontrick*, 540 U.S. at 452-56 (holding that a bankruptcy rule governing timely amendments was not jurisdictional); *United States v. Cotton*, 535 U.S. 625, 630-31 (2002) (holding that sentencing in excess of a statutory maximum did not deprive the sentencing court of jurisdiction). *But see Bowles v. Russell*, 551 U.S.

205, 209-10 (2007) (holding that the statutory time for the taking of an appeal from a district court decision is jurisdictional).

Two cases recently decided by the Court are instructive. In *Reed Elsevier*, the Court examined a provision of the Copyright Act providing that copyright holders must register their works before bringing suit for copyright infringement. Section 41(a) of the Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Holding that § 411(a) is not jurisdictional, the Court pointed to three factors. First, the Court pointed out that § 411(a) does not " 'clearly state[ ]' that its registration requirement is 'jurisdictional.' " *Reed Elsevier*, 130 S. Ct. at 1245 (quoting *Arbaugh*, 546 U.S. at 515). Second, the Court noted that § 411(a) was separate from other statutes that grant subject matter jurisdiction and that neither 28 U.S.C. § 1331 nor 28 U.S.C. § 1338 — which is specific to copyright — mentions the registration requirement. *Id.* at 1245-46. Finally, the Court could not find "any other factor [that] suggest[s] that 17 U.S.C. § 411(a)'s registration requirement can be read to 'speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.' " *Id.* at 1246 (quoting *Arbaugh*, 546 U.S. at 515); *see also Henderson*, 131 S. Ct. at 1202-07 (reaffirming and applying *Reed Elsevier*'s methodology).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Court addressed whether the Prison Litigation Reform Act's ("PLRA") exhaustion requirement[2] was a pleading requirement that the

---

[2]The PLRA exhaustion provision reads:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

prisoner must include in his complaint or an affirmative defense that the defendant must raise. The Court held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 216. Although the Court did not treat a heightened pleading requirement as going to the jurisdiction of the federal courts, the Court's conclusion — that PLRA defendants have the burden of pleading non-exhaustion, and that PLRA plaintiffs need not specifically plead exhaustion in their initial complaints — is consonant with our discussion of jurisdictional versus claim-processing requirements. If a requirement is jurisdictional, then a federal plaintiff has the burden of pleading in her initial complaint (however briefly) how that requirement has been met. *See* Fed. R. Civ. P. 8(a)(1). In other words, even though the Court did not state its result in such terms, it follows from *Jones* that the PLRA's exhaustion requirement is non-jurisdictional. *See Reed Elsevier*, 130 S. Ct. at 1246-47 & n.6 (citing *Jones* as an example of where the Court has "treated as nonjurisdictional other types of threshold requirements").

**[2]** With that background we return to the IDEA's exhaustion requirement in § 1415(*l*) and to our prior statement that "[i]f a plaintiff is required to exhaust administrative remedies, but fails to, federal courts are without jurisdiction to hear the plaintiff's claim." *Witte*, 197 F.3d at 1274; *see also Dreher v. Amphitheater Unified Sch. Dist.*, 22 F.3d 228, 231 (9th Cir. 1994) (suggesting, but not holding, that exhaustion was jurisdictional under the IDEA). First, we observe that nothing in § 1415 mentions the jurisdiction of the federal courts. In fact, neither the word "courts" nor the word "jurisdiction" appears in § 1415(*l*). Section 1415 is written as a restriction on the rights of plaintiffs to bring suit, rather than as a limitation on the power of the federal courts to hear the suit. That textual choice strongly suggests that the restriction may be enforced by defendants but that the exhaustion requirement may be waived or forfeited. *See, e.g.*, *Kontrick*, 540 U.S. at 456 ("Characteristically, a court's subject-matter jurisdiction can-

not be expanded to account for the parties' litigation conduct; a claim-processing rule, on the other hand, even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point."); *Jacobo Castillo*, 496 F.3d at 952 ("Defects in procedural rules may be waived or forfeited by parties who fail to object properly, whereas defects in our subject-matter jurisdiction go to the inherent power of the court and cannot be waived or forfeited." (footnote omitted)).

**[3]** Second, nothing in the relevant jurisdictional statutes requires exhaustion under the IDEA. Section 1415(*l*) provides that if the plaintiff is "seeking relief that is also available under [the IDEA], the procedures under [20 U.S.C. § 1415(f), (g)] shall be exhausted to the same extent as would be required had the action been brought under this subchapter." Section 1415(i) describes the actions that can be brought under the IDEA. A party who is "aggrieved by the findings and decision" made under the IDEA's procedures has "the right to bring a civil action . . . in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A). There is no restriction in this section on the subject matter jurisdiction of the federal courts. The only provision that arguably affects federal subject matter jurisdiction is the provision specifying that there is no amount-in-controversy requirement, and it appears to expand, rather than contract, federal jurisdiction. More to the point, the section expressly provides that suit may be brought in state or federal courts. As state courts are courts of general subject matter jurisdiction, it is hard to think that Congress would permit IDEA suits to be brought in state court but at the same time restrict the subject matter jurisdiction of the federal courts. Without clearer instruction from Congress, we are reluctant to infer such a restriction where Congress has not made it explicit. *See Henderson*, 131 S. Ct. at 1203 ("[Courts should] look to see if there is any 'clear' indication that Congress wanted the rule to be 'jurisdictional.' ").

Finally, we can find no reason why § 1415(*l*) should be read to make exhaustion a prerequisite to the exercise of federal subject matter jurisdiction. We can think of many good reasons why it should not. As we discuss in the next section, the exhaustion requirement in § 1415(*l*) is not a check-the-box kind of exercise. As our cases demonstrate, determining what has and what has not been exhausted under the IDEA's procedures may prove an inexact science. *See Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1302-03 (9th Cir. 1992) (noting that the IDEA's exhaustion requirement "is not a rigid one, and is subject to certain exceptions," determined by "the general purposes of exhaustion and the congressional intent behind the administrative scheme"). In other words, the exhaustion requirement appears more flexible than a rigid jurisdictional limitation — questions about whether administrative proceedings would be futile, or whether dismissal of a suit would be consistent with the "general purposes" of exhaustion, are better addressed through a fact-specific assessment of the affirmative defense than through an inquiry about whether the court has the power to decide the case at all. If we were to hold that exhaustion was jurisdictional, the question of exhaustion *vel non* would haunt the entire proceeding, including any appeals. We would have the obligation to raise the issue *sua sponte*, a particularly frustrating exercise for parties and courts when Congress has authorized the parties to file suit in state court in the first place. Congress may, of course, override our concerns and make the IDEA's exhaustion requirement jurisdictional, but we would need a clearer statement of its intent before we will impose such a requirement.

**[4]** In sum, we hold that the exhaustion requirement in § 1415(*l*) is not jurisdictional. It "is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision, and admits of congressionally authorized exceptions." *Reed Elsevier*, 130 S. Ct. at 1247. We overrule our statements to the contrary in *Blanchard*, 420 F.3d at 920-21; *Witte*, 197 F.3d at 1274; and *Dreher*, 22 F.3d at 231, and join the Sev-

enth and Eleventh Circuits. *Mosely*, 434 F.3d at 533; *N.B. by D.G.*, 84 F.3d at 1379; *see also Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 203 (2d Cir. 2007) (noting that the Second Circuit "ha[s] been equivocal in [its] discussion of the IDEA's exhaustion requirement, acknowledging [its] statement in [*Polera v. Board of Education*, 288 F.3d 478, 483, 488-90 (2d Cir. 2002),] that the failure to exhaust IDEA administrative remedies deprives a court of subject matter jurisdiction but also referring to the IDEA's exhaustion requirements as the defendants' 'non-exhaustion defense.' " (internal quotation marks and alterations omitted)). Our prior statements were well-intentioned even if not fully considered. We think our misstep well illustrates the Supreme Court's observation that "[c]ourts — including this Court — have sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case, and thus did not require close analysis." *Reed Elsevier*, 130 S. Ct. at 1243-44.

### III

We now turn to the merits. We hold that the IDEA's exhaustion provision applies only in cases where the relief sought by a plaintiff in the pleadings is available under the IDEA. Non-IDEA claims that do not seek relief available under the IDEA are not subject to the exhaustion requirement, even if they allege injuries that could conceivably have been redressed by the IDEA. We overrule our previous cases to the extent that they state otherwise and conclude that, although the district court properly dismissed Payne's IDEA-based § 1983 claim, it should not have dismissed her non-IDEA claims on exhaustion grounds.

### A

The IDEA was enacted to protect children with disabilities and their parents by requiring participating states to provide

"a free appropriate public education [('FAPE')] that empha-
sizes special education and related services designed to meet
[disabled students'] unique needs and prepare them for further
education, employment, and independent living." 20 U.S.C.
§ 1400(d)(1)(A). Participating states must provide eligible
students with a "free appropriate public education," *id.*
§ 1412(a)(1)(A), that, among other things, conforms to a
proper IEP, *see id.* §§ 1412(a)(4), 1436(d), and ensures that
disabled students "[t]o the maximum extent appropriate, . . .
are educated with children who are not disabled," *id.*
§ 1412(a)(5)(A). Children with disabilities and their parents
are provided with the extensive procedural protections set out
in 20 U.S.C. § 1415. In particular, the statute requires states
to provide aggrieved parties with the opportunity to mediate
their disputes, *id.* § 1415(e), to secure an impartial due pro-
cess hearing to resolve certain differences with state agencies,
*id.* § 1415(f), and to appeal any decision and findings to the
state educational agency, *id.* § 1415(g). As we have stated
above, the exhaustion provision requires parties to avail them-
selves of these procedures (and the corresponding local
appeals process) before resorting to the courts whenever they
"seek[ ] relief that is also available under [the IDEA]." *Id.*
§ 1415(*l*).

The exhaustion requirement is found in § 1415(*l*). This pro-
vision is worth quoting again, in full:

> Nothing in this chapter shall be construed to restrict
> or limit the rights, procedures, and remedies avail-
> able under the Constitution, the Americans with Dis-
> abilities Act of 1990 [42 U.S.C.A. § 12101 et seq.],
> title V of the Rehabilitation Act of 1973 [29
> U.S.C.A. § 791 et seq.], or other Federal laws pro-
> tecting the rights of children with disabilities, except
> that before the filing of a civil action under such
> laws seeking relief that is also available under this
> subchapter, the procedures under subsections (f) and
> (g) shall be exhausted to the same extent as would be

required had the action been brought under this sub-chapter.

20 U.S.C. § 1415(*l*) (alterations in original). We begin with a few observations. First, this provision is titled "Rule of construction." *Id.* It thus provides us with a rule for harmonizing the IDEA with overlapping "rights, procedures, and remedies" found in other laws. Second, the rule of construction tells us in very plain terms that the IDEA must be construed to coexist with other remedies, including remedies available under the Constitution, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and "other Federal laws." The principal remedy available for violations of the Constitution is 42 U.S.C. § 1983, which creates an action in law or suit in equity against any person who, acting under color of state law, deprives the plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws." Like the IDEA, the ADA and the Rehabilitation Act create their own private causes of action to enforce those acts, *see* 42 U.S.C. § 12117; 29 U.S.C. § 794a, although all three acts have been enforced under § 1983 as well. *See, e.g., Marie O. v. Edgar*, 131 F.3d 610, 622 (7th Cir. 1997); *K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 361-63 (S.D.N.Y. 2005); *BD v. DeBuono*, 130 F. Supp. 2d 401, 427-29 (S.D.N.Y. 2000). *But see Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 938 (9th Cir. 2007) (holding that § 1983 does not authorize actions predicated on violations of the IDEA). Third, the exhaustion provision in § 1415(*l*) is framed as an exception to the general rule of construction that "[n]othing in [the IDEA] shall be construed to restrict" the rights, procedures, and remedies available under § 1983, the ADA, or the Rehabilitation Act. In other words, remedies available under the IDEA, by rule, are in addition to the remedies parents and students have under other laws. Indeed, § 1415 makes it clear that Congress understood that parents and students affected by the IDEA would likely have issues with schools and school personnel that could be addressed — and perhaps could only be addressed — through a suit under § 1983 or other federal

laws. Finally, we observe that § 1415(*l*) requires exhaustion of IDEA remedies only when the civil action brought under § 1983, the ADA, the Rehabilitation Act, or other federal laws "seek[s] *relief* that is also available" under the IDEA. Thus, the "except" clause requires that parents and students exhaust the remedies available to them under the IDEA before they seek *the same relief* under other laws.

Our decision in *Witte* is consistent with these principles. There, we recognized that the IDEA's exhaustion provision does not encompass every challenge concerning a school's treatment of a disabled student. The Wittes complained that school officials forced their disabled child to eat oatmeal (to which he was allergic) occasionally mixed with his own vomit, choked him, and subjected him to "take-downs" and other physical abuses. *Witte*, 197 F.3d at 1273. These actions were punitive responses to the child's bodily tics that resulted from Tourette's Syndrome. *Id.* The Wittes eventually agreed with the school district to transfer their son to another school in the same district and then sued for compensatory and punitive damages under 42 U.S.C. § 1983, the Rehabilitation Act, the ADA, and state tort law. *Id.* at 1273-74. The district court granted the defendants summary judgment on the ground that the Wittes had failed to exhaust their administrative remedies under the IDEA. *Id.* at 1274.

We reversed. We held that the IDEA's exhaustion provision did not apply to plaintiffs who claimed that school officials had inflicted physical and emotional abuse on their child, *id.* at 1273, when their complaint sought only retrospective damages because the parties had already resolved their educational issues through "the remedies that are available under the IDEA," *id.* at 1276. We emphasized that because monetary damages were ordinarily unavailable under the IDEA, the plaintiffs were "not seeking relief that is also available under the IDEA." *Id.*; *see also id.* at 1276 ("The remedies available under the IDEA would not appear to be well-suited to addressing past physical injuries adequately; such injuries

typically are remedied through an award of monetary damages."). Accordingly, "under the plain words of the statute, exhaustion of administrative remedies is not required." *Id.* at 1275.

We subsequently took a more muscular view of § 1415(*l*) in *Robb*, holding "that when a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required." *Robb*, 308 F.3d at 1048. *Robb* involved a student who was diagnosed with cerebral palsy and was regularly removed from her classroom "for extended 'peer-tutoring' by junior high school and high school students without the supervision of a certified teacher." *Id.* This tutoring took place on the floor of a dim hallway without a chair or desk. *Id.* No additional abuse was alleged. Taking guidance from *Witte*, the Robbs limited their prayer for relief to money damages, but specified that they were for "lost educational opportunities and emotional distress, humiliation, embarrassment, and psychological injury." *Robb*, 308 F.3d at 1048 (internal quotation marks omitted). The district court held that the Robbs had not exhausted their administrative remedies. *Id.*

We affirmed in a divided decision. The panel majority expressed concern that parents might "be permitted to opt out of the IDEA simply by making a demand for money or services the IDEA does not provide." *Id.* at 1050. Noting that there appeared to be a division of authority among the circuits — the Third Circuit took the position that exhaustion was unnecessary in a suit seeking only damages, while the First, Sixth, Seventh, Tenth, and Eleventh Circuits held that limiting requested relief to damages alone was not enough to avoid the exhaustion requirement of the IDEA[3] — we held "that a plain-

---

[3]Notably, it is no longer clear that there is a circuit split on this issue. In *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791 (3d Cir. 2007) (en banc), the Third Circuit did not merely backtrack from its position that an IDEA claim need not be exhausted if the plaintiff only sought money damages; it went further and concluded that IDEA rights could not be vindicated through a § 1983 suit at all. *Id.* at 798-99. In doing so, it overruled *W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995), which we cited in *Robb* to demonstrate the circuit split.

tiff cannot avoid the IDEA's exhaustion requirement merely by limiting a prayer for relief to money damages." *Id.* at 1049. We then adopted the rule that the IDEA's exhaustion requirement applied to any case in which a plaintiff "alleged injuries that could be redressed *to any degree* by the IDEA's administrative procedures and remedies." *Id.* at 1050 (emphasis added).[4] In a number of subsequent cases, we have reaffirmed Robb's "injury-centered" approach. *See, e.g.*, *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 952 (9th Cir. 2010); *Kutasi v. Las Virgenes Unified Sch. Dist.*, 494 F.3d 1162, 1163-64 (9th Cir. 2007); *Blanchard*, 420 F.3d at 921.

Furthermore, the Seventh and Tenth Circuits have adopted "injury-centered" tests similar to the one we adopted in *Robb*. *See, e.g.*, *McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 568-69 (7th Cir. 2004) (citing *Robb*, 308 F.3d at 1054, and holding that exhaustion can only be avoided "if the plaintiff has alleged injuries that cannot be redressed to any degree by the IDEA's administrative procedures and remedies" (internal quotation marks omitted)); *Cudjoe v. Indep. Sch. Dist. # 12*, 297 F.3d 1058, 1066 (10th Cir. 2002) ("[T]he dispositive question generally is whether the plaintiff has alleged injuries that could be redressed *to any degree* by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required." (alteration in original) (internal quotation marks omitted)).

Other circuits have generally agreed that plaintiffs cannot evade the exhaustion requirement simply by limiting their

---

[4]Judge Berzon dissented to emphasize that "the issue is whether the *relief* plaintiffs *seek* is available" under the IDEA. *Robb*, 308 F.3d at 1056 (Berzon, J., dissenting). She expressed the view that "[i]nsofar as the plaintiffs here are seeking relief that is not educationally-oriented (here, compensation for past emotional harms) and is not present- or future-focused, they are not seeking relief available under this statute. As this court and others have made clear, damages to compensate for past pain and suffering do not fit into the model of relief available under the IDEA's administrative remedies." *Id.*

prayer for relief to a request for damages. *See, e.g., Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 64 (1st Cir. 2002) ("[W]e hold that plaintiffs who bring an IDEA-based claim under 42 U.S.C. § 1983, in which they seek only money damages, must exhaust the administrative process available under the IDEA as a condition precedent to entering a state or federal court."); *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000) ("[W]e agree with those courts that have decided that a mere claim for money damages is not sufficient to render exhaustion of administrative remedies unnecessary . . . ."); *N.B. by D.G. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996) (holding that plaintiffs cannot avoid the exhaustion requirement by limiting their requested relief to money damages because otherwise, "future litigants could avoid the exhaustion requirement simply by asking for relief that administrative authorities could not grant"). However, these courts have not articulated a comprehensive standard for determining when exactly the exhaustion requirement applies.

### B

We now clarify and restate the proper method for resolving IDEA exhaustion cases, and we overrule *Robb* to the extent it is inconsistent with our decision. The IDEA's exhaustion requirement applies to claims only to the extent that the relief actually sought by the plaintiff could have been provided by the IDEA. In other words, we reject the "injury-centered" approach developed by *Robb* and hold that a "relief-centered" approach more aptly reflects the meaning of the IDEA's exhaustion requirement.

### 1

Relying on *Robb*, the panel majority focused its analysis on the question of whether the *injuries* suffered by D.P. more closely resembled the force-feeding and take-downs alleged in *Witte* or the isolated peer tutoring alleged in *Robb*. *Payne*,

598 F.3d at 1127. In other words, the panel majority employed an injury-centered approach and concluded that because Payne was alleging misconduct that *in theory* could have been redressed by resorting to administrative remedies under the IDEA, she could not seek *any* redress for that misconduct in the courts until she had exhausted those administrative remedies. In a way, our approach in *Robb* treated § 1415(*l*) as a quasi-preemption provision, requiring administrative exhaustion for any case that falls within the general "field" of educating disabled students.

**[5]** For reasons we have explained, this approach is inconsistent with the IDEA's exhaustion provision. The statute specifies that exhaustion is required "before the filing of a civil action . . . seeking *relief* that is also available under [the IDEA]." 20 U.S.C. § 1415(*l*) (emphasis added). This suggests that whether a plaintiff *could have* sought relief available under the IDEA is irrelevant — what matters is whether the plaintiff *actually* sought relief available under the IDEA. In other words, when determining whether the IDEA requires a plaintiff to exhaust, courts should start by looking at a complaint's prayer for relief and determine whether the relief sought is also available under the IDEA. If it is not, then it is likely that § 1415(*l*) does not require exhaustion in that case.

**[6]** We agree with much of the approach proposed by amicus United States Department of Justice. Under a relief-centered approach, § 1415(*l*) requires exhaustion in three situations. First, exhaustion is clearly required when a plaintiff seeks an IDEA remedy or its functional equivalent. For example, if a disabled student files suit under the ADA and challenges the school district's failure to accommodate his special needs and seeks damages for the costs of a private school education, the IDEA requires exhaustion regardless of whether such a remedy is available under the ADA, or whether the IDEA is mentioned in the prayer for relief. Again, in that case the "relief . . . is also available" under the IDEA, *see* 20 U.S.C. § 1412(a)(10), and the student must exhaust his IDEA

remedies before seeking parallel relief under the ADA. Second, the IDEA requires exhaustion in cases where a plaintiff seeks prospective injunctive relief to alter an IEP or the educational placement of a disabled student. As with the previous point, § 1415(*l*) bars plaintiffs from seeking relief that is available to them under the IDEA, even if the plaintiffs have urged the court to craft the remedy from a different federal statute. Third, exhaustion is required in cases where a plaintiff is seeking to enforce rights that arise as a result of a denial of a free appropriate public education, whether pled as an IDEA claim or any other claim that relies on the denial of a FAPE to provide the basis for the cause of action (for instance, a claim for damages under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, premised on a denial of a FAPE). Such claims arise under either the IDEA (if the IDEA violation is alleged directly) or its substantive standards (if a § 504 claim is premised on a violation of the IDEA), so the relief follows directly from the IDEA and is therefore "available under this subchapter." 20 U.S.C. § 1415(*l*). We think that these situations encompass cases in which "[b]oth the genesis and the manifestations of the problem are educational." *Blanchard*, 420 F.3d at 921 (quoting *Charlie F. v. Bd. of Educ.*, 98 F.3d 989, 993 (7th Cir. 1996)) (alteration in original).

This approach is consistent with our understanding that the exhaustion provision is designed to "allow[ ] for the exercise of discretion and educational expertise by state and local agencies, afford[ ] full exploration of technical educational issues, further[ ] development of a complete factual record, and promote[ ] judicial efficiency by giving . . . agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft*, 967 F.2d at 1303. The exhaustion requirement is intended to prevent courts from acting as ersatz school administrators and making what should be expert determinations about the best way to educate disabled students. At the same time, it is not intended to temporarily shield school officials from all liability for conduct that violates constitutional and statutory rights that exist *indepen-*

*dent* of the IDEA and entitles a plaintiff to relief *different* from what is available under the IDEA. Our decision reflects this limited purpose of the IDEA's exhaustion requirement.

### 2

The legislative history of 20 U.S.C. § 1415(*l*) supports our understanding of its meaning. The exhaustion provision was included as part of the Handicapped Children's Protection Act of 1986, Pub. L. No. 99-372, § 3, and followed the Supreme Court's decision in *Smith v. Robinson*, 468 U.S. 992 (1984). *See* S. Rep. No. 99-112, at 2 (1985). In *Smith*, the Court held that the Education of the Handicapped Act ("EHA") — the IDEA's predecessor statute — served as "the exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education." 468 U.S. at 1009. In doing so, the Court held that Congress intended to eliminate a plaintiff's ability to seek relief for that injury under 42 U.S.C. § 1983. *Id.* at 1012-13. The language now codified in § 1415(*l*) was enacted in response to that decision. *See* Pub. L. No. 99-372, § 3 (1986). Congress specifically sought to "make[ ] it clear that when parents choose to file suit under another law that protects the rights of handicapped children . . . , *if that suit could have been filed under the EHA,* then parents are required to exhaust EHA administrative remedies." S. Rep. No. 99-112, at 15 (1985) (emphasis added). Indeed, a number of cases decided shortly after § 1415(*l*) was enacted understood it to implement Congress's will that the provision "reaffirm . . . the viability of . . . other statutes as separate vehicles for ensuring the rights of handicapped children." *Digre v. Roseville Schs. Indep. Dist. No. 623*, 841 F.2d 245, 250 (8th Cir. 1988); *see also Mrs. W. v. Tirozzi*, 832 F.2d 748, 754 (2d Cir. 1987) (characterizing § 1415(*l*) as a "nonexclusivity provision").

### 3

**[7]** The approach we have adopted yields a number of implications. First, because our approach emphasizes the

relief sought rather than the types of injuries alleged, we find no merit to the distinction we have previously drawn between physical and non-physical injuries. *See Robb*, 308 F.3d at 1052. Although physical injuries might bolster a plaintiff's likelihood of success in a case, there is no reason to treat constitutional violations that do not result in physical injuries differently under the exhaustion provision. *See Blanchard*, 420 F.3d at 922 (holding that the IDEA does not require exhaustion when the plaintiff's "emotional distress injuries . . . could not be remedied through the educational remedies available under the IDEA").

**[8]** We also hold that in cases where a plaintiff is seeking money damages, courts should not engage in the depth of speculation we conducted in *Robb*. In that case, we inferred that the Robbs sought money "[p]resumably at least in part to pay for services (such as counseling and tutoring) that will assist their daughter's recovery of self-esteem and promote her progress in school. Damages could be measured by the cost of these services. Yet the school district may be able . . . to provide these services *in kind* under the IDEA." *Robb*, 308 F.3d at 1050. We no longer think that such speculation is appropriate. Although we agree with the proposition that "a plaintiff cannot avoid the IDEA's exhaustion requirement merely by limiting a prayer for relief to money damages," *id.* at 1049, we do not think, especially in the context of motions to dismiss or summary judgment motions, that it is proper for courts to assume that money damages will be directed toward forms of relief that would be available under the IDEA.

**[9]** At the same time, plaintiffs cannot avoid exhaustion through artful pleading. If the measure of a plaintiff's damages is the cost of counseling, tutoring, or private schooling — relief available under the IDEA — then the IDEA requires exhaustion. In such a case, the plaintiffs are seeking the same relief, even if they are willing to accept cash in lieu of services in kind. Accordingly, the exhaustion requirement would also apply in cases where a plaintiff is arguing that a state's

failure to provide specialized programs for disabled students violates the Equal Protection Clause of the Fourteenth Amendment and seeks damages to fund a private education (without mentioning the IDEA). It would also apply to cases in which the plaintiff requests damages to compensate for costs associated with unilaterally altering a disabled student's educational placement, since such a request would also be "seeking relief that is also available under" the IDEA. 20 U.S.C. § 1415(*l*). In other words, to the extent that a request for money damages functions as a substitute for relief under the IDEA, a plaintiff cannot escape the exhaustion requirement simply by limiting her prayer for relief to such damages. However, to the extent that a plaintiff has laid out a plausible claim for damages unrelated to the deprivation of a FAPE, the IDEA does not require her to exhaust administrative remedies before seeking them in court.

Finally, we do not believe that the exhaustion requirement is triggered simply because the challenged conduct constitutes "at least . . . an attempt at an educational program." *See Payne*, 598 F.3d at 1127 (quoting *Robb*, 308 F.3d at 1052 n.3). As amicus Department of Justice points out, whether a school official's action is a reasonable "attempt at an educational program" may comprise the very heart of a dispute about the constitutionality of that action. Thus, for example, if a student alleges a Fourth Amendment violation, the school may answer that any search or seizure was reasonably related to the school's educational programs; but the student is not deprived of a § 1983 remedy merely because the conduct took place in the context of educating the disabled. Particularly in contexts where courts are expected to draw inferences in favor of plaintiffs, we do not think it is appropriate to make what are essentially merits determinations in the context of evaluating the need for exhaustion. Nothing in the IDEA protects a school from non-IDEA liability simply because it was making a good-faith attempt to educate its disabled students. If the school's conduct constituted a violation of laws other

than the IDEA, a plaintiff is entitled to hold the school responsible under those other laws.

4

The National School Boards Association ("NSBA"), as amicus, suggests that our conclusion is at odds with the Supreme Court's decision in *Booth v. Churner*, 532 U.S. 731 (2001), a case in which the Court construed the exhaustion requirement in the PLRA, 42 U.S.C. § 1997e(a). Indeed, *Booth*'s language factored "strongly" in *Robb*'s conclusion, since we noted in that case that "[t]he PLRA's exhaustion requirement is framed in language similar to the IDEA's." *Robb*, 308 F.3d at 1050-51 (comparing "administrative remedies . . . available" under the PLRA, 42 U.S.C. § 1997e(a), to "relief that is also available" under the IDEA, 20 U.S.C. § 1415(*l*)). In *Booth*, the Court concluded that the PLRA "mandate[s] exhaustion . . . regardless of the relief offered through administrative procedures." 532 U.S. at 741. We held in *Robb* that, applied to the IDEA, this language meant that "a plaintiff must exhaust a mandatory administrative process even if the precise form of relief sought is not available in the administrative venue." 308 F.3d at 1051. This wording suggests that even if a plaintiff has available non-IDEA forms of relief in addition to potential relief under the IDEA, the plaintiff must exhaust administrative remedies before pursuing any of them. While this conclusion was correct in *Booth*, there are important differences between the PLRA and the IDEA, and *Robb* incorrectly applied the same conclusion to the IDEA. The PLRA's exhaustion requirement specifies that "[n]o *action* shall be brought . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). The language is unequivocal and makes no reference to parallel forms of relief. *Booth* sensibly interpreted the prohibition on bringing an action to mean that the PLRA restricted unexhausted prisoner litigation altogether. By contrast, the IDEA's exhaustion provision applies only to "the filing of a civil action . . . seeking *relief* that is also available

under [the IDEA]"; otherwise, the IDEA does not "restrict or limit the rights, procedures, and remedies" available under § 1983, the ADA, the Rehabilitation Act, or other federal laws. 20 U.S.C. § 1415(*l*). The difference between these two statutes is critical — unlike the PLRA, the IDEA requires exhaustion only from plaintiffs who are pursuing non-IDEA claims *that compel the same forms of relief* as the IDEA.

The NSBA also appeals to the inevitability of parent-school disputes and argues that "[r]elaxing the IDEA's administrative exhaustion requirement does violence" to Congress's goal of expediting the resolution of these disputes. We are mindful of "the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992). The general rule is a salutary one allowing agencies to exercise their expertise, to correct their own errors, and to provide relief that may be both swifter and more satisfactory than relief available through more formal litigation. Even where the parties ultimately file suit in federal court after exhausting their administrative remedies, we may benefit from a process that has developed the factual record and narrowed the issues contested by the parties.

The reasons for administrative exhaustion do not change the fact that the IDEA's exhaustion requirement is not as broad as the NSBA urges. Moreover, the NSBA's reading would actually place disabled students in a disadvantaged position relative to students without special needs. As Payne accurately notes, a student who had no disability — and therefore had no need for an IEP — would be able to challenge the constitutionality of his teacher's confinement procedures without first resorting to administrative procedures. The student could simply advance a § 1983 claim alleging violations of his constitutional rights. No exhaustion would be required. If a disabled student would be able to make out a similarly meritorious constitutional claim — one that need not reference his disability at all — it is odd to suggest that the IDEA

would impose additional qualifications to sue, simply because
he had a disability.

### C

We have carefully examined the criticism raised by the dis-
sent and, with respect, do not think such criticism alters our
views.

### 1

The dissent argues that our approach "largely nullifies
§ 1415(*l*) by providing plaintiffs with an easy end-run around
the exhaustion requirement," because exhaustion would not
be required "[s]o long as a complaint which seeks monetary
damages does not mention a specific provision of the IDEA,
or demand a remedy specifically provided by it." Dissenting
Op. at 9779. Nothing in our analysis "nullifies" § 1415(*l*). If
a plaintiff does not seek relief based on an IDEA right, and
does not seek a remedy provided by the IDEA, then she is not
bound by the IDEA's prerequisites for litigation. This does
not "nullif[y] § 1415(*l*)" — it simply limits the provision to
its intended scope.

Indeed, the dissent seems particularly concerned with the
fact that our approach "elevates the form of plaintiffs' plead-
ings over their substance," Dissenting Op. at 9777,[5] and facili-
tates "gamesmanship," Dissenting Op. at 9772. But this worry
is misplaced. In each case where a defendant raises § 1415(*l*)

---

[5]The dissent contends that we improperly focus on the pleadings
because this appeal reaches us from a grant of summary judgment, in
which the district court considered the evidence presented by the parties.
Dissenting Op. at 9777-78 n.5. However, we focus on the pleadings
because initially they determine whether the plaintiff is actually "seeking
relief" available under the IDEA. Whether Payne can provide evidence
supporting her claim of entitlement to such relief is a separate question —
one that the district court did not address (because it had no need to) in
its order granting summary judgment.

as a complete or partial defense, two possibilities arise. First, a court might decide that a complaint states a facially merito-rious claim that does not either rely on rights created by the IDEA or seek remedies available under the IDEA. If a com-plaint can stand on its own without reference to the IDEA, it is difficult to see why the IDEA should compel its dismissal. It is hardly an "nullification of the congressionally mandated exhaustion requirement," Dissenting Op. at 9771, to say that a complaint that presents sound claims wholly apart from the IDEA need not comport with the IDEA's requirements. Even though such a case might "subject school districts to civil lia-bility for money damages, without first giving school districts the opportunity to remedy the plaintiff's injuries under the IDEA," Dissenting Op. at 9772, this will only be because some other governing law *authorizes* such liability. The dis-sent's suggestion that this constitutes "gamesmanship" is puz-zling. The fact that the plaintiff *could have* added IDEA claims to an otherwise sound complaint (and thus subjected themselves to the exhaustion requirement), but chose not to, should not detract from the viability of that complaint.

Of course, a plaintiff might try to evade the exhaustion requirement by relying on "artful" allegations. This is the situ-ation the dissent appears to worry most about. But our approach still requires exhaustion in these cases. For example, the dissent provides the example of "a disabled child who seeks monetary damages because a school district's imple-mentation of some educational program resulted in a claimed failure to adequately instruct him in reading." Dissenting Op. at 9777-78. The dissent interprets our opinion as allowing such a claim to proceed without exhaustion so long as the complaint "does not mention a specific provision of the IDEA." Dissenting Op. at 9779. But where the claim arises only as a result of a denial of a FAPE, whether under the IDEA or the Rehabilitation Act, exhaustion is clearly required no matter how the claim is pled. To use the dissent's example, a claim for failure to adequately instruct a student in reading can arise only under the IDEA because there is no other fed-

eral cause of action for such a claim. *See Plyler v. Doe*, 457
U.S. 202, 221 (1982) (finding no enforceable federal constitu-
tional right to a public education); *cf. Blanchard v. Morton
Sch. Dist.*, 509 F.3d 934, 938 (9th Cir. 2007) (holding that
§ 1983 does not authorize suits for IDEA violations). The
claim asserted here — for knowing and intentional infliction
of excessive force — is cognizable under the Fourth Amend-
ment and exists separate and apart from the denial of a FAPE,
irrespective of the fact that the alleged excessive punishment
took place in a special education classroom. *See, e.g.*, *Pre-
schooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175,
1181-82 (9th Cir. 2007) (holding that clearly established law
under the Fourth Amendment prohibits "excessive physical
abuse of schoolchildren"); *Doe ex rel. Doe v. Haw. Dept. of
Educ.*, 334 F.3d 906, 909 (9th Cir. 2003). Although we would
not doubt, for example, that an unconstitutional beating might
interfere with a student enjoying the fruits of a FAPE, the
resulting excessive force claim is not, for that reason alone, a
claim that must be brought under the IDEA.

2

The dissent nonetheless contends that § 1415(*l*) requires
exhaustion whenever the IDEA's administrative procedures
"may lead to the provision of curative or palliative 'related
services.' " Dissenting Op. at 9774. Here, for example, the
dissent suggests that the school district could have provided
"intensive individualized tutoring" or "[p]sychological coun-
seling" to correct both the past and ongoing aftereffects suf-
fered by D.P. as a result of Coy's use of the isolation room.
Dissenting Op. at 9775. The dissent therefore concludes that
because Payne is seeking damages "for the past and ongoing
academic and psychological aftereffects of D.P.'s claimed
mistreatment of the school district," exhaustion is required.
Dissenting Op. at 9776 (emphasis omitted).

This approach misreads § 1415(*l*) and is at odds with *Witte*.
First, it is not clear that the IDEA actually authorizes relief

designed to correct the effects of misconduct by the school. The dissent suggests that "the 'related services' provided under the IDEA — academic services, psychological counseling and therapy — may cure, alleviate, or mitigate [injuries caused by a school district's wrongful act or omission]." Dissenting Op. at 9774. But the IDEA defines "related services" to include "transportation, and such developmental, corrective, and other supportive services . . . as may be required to assist a child with a disability *to benefit from special education*, and includes the early identification and assessment of disabling conditions in children." 20 U.S.C. § 1401(26)(A) (emphasis added). In other words, it is far from clear that the IDEA authorizes the provision of services designed to correct injuries caused by the school's past violation of other laws.

Furthermore, even if such services *are* available under the IDEA, the dissent's proposal is plainly too broad. For example, the student in *Witte* could plausibly have received *some* psychological counseling and therapy that *might* have corrected or mitigated some of the harms resulting from the abuse he suffered at school. *See Witte*, 197 F.3d 1272-73. Under the dissent's view, the fact that Witte sought remedies only for physical injuries without seeking relief under the IDEA could easily be characterized as "gamesmanship" that should be set aside in favor of the exhaustion requirement. The dissent's approach would necessarily require such speculation, even in fact patterns identical to the one in *Witte*. The dissent would hold that if psychological counseling *could* correct a student's injuries, then exhaustion is required even if the injuries were caused by a non-IDEA violation for which federal law authorizes remedies apart from the IDEA.

We think such an approach would be mistaken. If a plaintiff can identify a school district's violation of federal laws other than the IDEA and can point to an authorized remedy for that violation unavailable under the IDEA, then there is no reason to require exhaustion under § 1415(*l*). The dissent's approach would effectively refashion § 1415(*l*) from a provi-

sion designed to facilitate the coexistence of the IDEA with other forms of relief into one designed to preempt all cases involving the mistreatment of disabled students by a school. We do not think that the IDEA's exhaustion requirement was intended to penalize disabled students for their disability. This is not what § 1415(*l*) says, and we think it is not what Congress intended.

IV

A

**[10]** We now apply our approach to Payne's case and supply instructions for the district court. Payne alleged several § 1983 claims, as well as Washington state tort actions for negligence and outrage. The district court did not specifically address each claim and explain why exhaustion was required for each. Relying on *Robb*, it simply stated that "because plaintiffs' injuries could be remedie[d] to some degree by the IDEA's administrative procedures and remedies, the plaintiffs must exhaust those administrative remedies before filing suit." However, in light of the new standards announced in this decision, the district court on remand should permit Payne to amend her complaint in order to flesh out her specific claims and enable the court to determine which claims require IDEA exhaustion and which do not.

**[11]** The district court should then provide the defendants with an opportunity to seek dismissal of some or all of Payne's claims on the ground that they require administrative exhaustion. The district court need not wait to consider the applicability of the exhaustion requirement until the record is complete and a motion for summary judgment has been filed. We have previously held that a non-jurisdictional exhaustion requirement can be cited defensively "as a matter in abatement, . . . subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) (collecting cases).

This is because, as a general matter, "summary judgment is on the merits, whereas dismissal of an action on the ground of failure to exhaust administrative remedies is not on the merits." *Id.* Unlike a judgment on the merits, a plaintiff's failure to exhaust administrative remedies should result in a dismissal without prejudice. *See City of Oakland, Cal. v. Hotels.com LP*, 572 F.3d 958, 962 (9th Cir. 2009). Generally, in entertaining an unenumerated motion to dismiss, "the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt*, 315 F.3d at 1120. We see little reason to depart from this rationale in the context of the IDEA. The defendants should be permitted to challenge Payne's claims under the exhaustion provision in an unenumerated motion to dismiss, in the context of which the court may decide disputed issues of fact to the extent they are necessary to deciding whether her claims require exhaustion and, if so, whether she has adequately exhausted available administrative remedies.

**[12]** Because § 1415(*l*) focuses on the "relief" sought in an action,[6] it is conceivable that a district court, in entertaining a motion to dismiss, might not *initially* conclude that exhaustion is required for certain claims, but might recognize subsequently that, in fact, the remedies being sought by a plaintiff could have been provided by the IDEA. In such a case, we think the defendants should be permitted to provide evidence

---

[6]Section 1415(*l*)'s emphasis on the relief sought by a plaintiff makes it different from the provisions we have previously addressed. For example, in *Wyatt*, we interpreted the exhaustion requirement of the PLRA, which, as we have discussed, differs from § 1415(*l*) in that it restricts the filing of *all* pre-exhaustion actions — regardless of the relief sought — by prisoners. *See* 42 U.S.C. § 1997e(a). Likewise, *Wyatt*'s predicate cases typically involved arbitration requirements in private contracts, which, again, restricted the filing of entire actions, regardless of the relief sought. *See, e.g., Inlandboatmens Union of Pac. v. Dutra Grp.*, 279 F.3d 1075, 1077 (9th Cir. 2002) (interpreting an agreement that required arbitration over "[*a*]ny dispute concerning . . . wages, working conditions, or any other matters referred to in this [contract]" (emphasis added)); *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 367 (9th Cir. 1988).

showing that the relief being sought by that plaintiff was, in fact, available under the IDEA. Because the line between damages available under other remedial sources and relief available under the IDEA is less than clear, the finder of fact should, in assessing remedies, be permitted to assess the evidence and withhold those that are unexhausted and available under the IDEA.

We recognize that this approach to exhaustion is somewhat unconventional — it is anomalous to permit a party to raise failure to exhaust as a defense in both a motion to dismiss and at the fact-finding stage of a proceeding. But as we have noted, § 1415(*l*) is itself an anomalous provision, since it does not categorically preclude claims and instead requires a court to examine the relief being sought by those claims and to compare it to the relief available under the IDEA. Ultimately, § 1415(*l*) is designed to channel requests for a FAPE (and its incidents) through IDEA-prescribed procedures. The procedure we have outlined, while somewhat unusual, faithfully executes Congress's design.

## B

After Payne is given the opportunity to amend her complaint, the district court should examine each of Payne's requests for relief and determine whether the exhaustion requirement applies to each. It may then dismiss any claims that are governed by the exhaustion requirement, but it should not dismiss any remaining claims.[7] To provide additional

---

[7]The dissent contends that we should nonetheless affirm the district court's grant of summary judgment (perhaps after deciding to construe it as an unenumerated motion to dismiss) because "*all* of the facts presented to the district court indicated the Paynes *were* seeking at least some relief that was 'also available' under the IDEA." Dissenting Op. at 9784. Although we agree that "at least some" of the relief being sought by Payne does require exhaustion, we do not think this requires the court to dismiss Payne's entire case. We see no reason to adopt such a "total exhaustion

guidance concerning the new approach we have adopted, we briefly discuss some of Payne's federal claims in her current complaint and the relief sought. We reiterate, of course, that the district court should permit Payne to amend her complaint before determining which aspects are barred by the exhaustion requirement.

**[13]** The easiest claim to address is Payne's claim that the defendants violated D.P.'s "statutory rights under the IDEA." This claim is plainly barred by § 1415(l) because any relief that Payne could obtain for violations of the IDEA is "relief that is also available under [the IDEA]" itself. Section 1415(*l*) is explicit that Payne must exhaust her IDEA remedies "to the same extent as would be required had the action been brought under [the IDEA]."

**[14]** With respect to the remaining § 1983 claims — alleged violations of the Fourth, Eighth, and Fourteenth Amendments — the complaint does not explicitly link each constitutional claim to a form of requested relief. Rather, the complaint seeks declaratory relief and general, special, and punitive damages. Accordingly, it will be the task of the district court on remand to determine whether the relief being

---

rule" similar to the one we apply in the context of habeas corpus. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). The Supreme Court has observed that "total exhaustion" is the exception rather than the rule. *See Jones*, 549 U.S. at 221 (holding that the PLRA's exhaustion requirement did not create a total exhaustion rule and noting that "[a]s a general matter, if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad. [O]nly the bad claims are dismissed; the complaint as a whole is not. If Congress meant to depart from this norm, we would expect some indication of that, and we find none." (alteration in original) (internal quotation marks omitted)).

Additionally, because we articulate a new standard today, it is appropriate to remand the case to the district court to apply that standard. On remand, the district court should allow the parties to amend their pleadings and take any other steps necessary to apply this new approach.

sought is "also available under" the IDEA. For example, Payne's request for "general damages for extreme mental suffering and emotional distress" would not fall within the purview of § 1415(*l*) if such damages are intended to compensate Payne for injuries resulting from Fourth or Eighth Amendment violations committed by school officials. *Cf. Blanchard*, 420 F.3d at 922 (holding that a request for damages for "emotional distress injuries" did not require exhaustion because they "could not be remedied through the educational remedies available under the IDEA"). If, however, the "emotional distress" stems from Payne's concern that D.P. was not receiving an adequate education, then exhaustion is required.

To take a second example, the complaint alleges violations of "procedural and substantive due process" under the Fourteenth Amendment. If Payne seeks damages for the school district's failure to provide procedural due process for rights conferred by the IDEA, the claims must be exhausted because the IDEA provides procedural due process rights, 20 U.S.C. § 1415(f)-(g), and Payne cannot simply claim damages in place of the process available to her. Similarly, we cannot discern the contours of Payne's current substantive due process claim, but if, for example, the claim is for deprivation of a "free and appropriate education," *see* 20 U.S.C. § 1412(a)(1)(A), then Payne seeks relief that is also available under the IDEA, and she must exhaust her statutory remedies.[8]

Finally, we emphasize that our holding only removes certain procedural barriers preventing Payne from litigating her non-IDEA claims. We have not been asked to, and do not, decide whether any of these claims are meritorious.

_____

[8]We have no occasion here to opine on the existence or scope of such a right, but even if there is such a right, Congress may require administrative exhaustion of constitutional claims. *See United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 9 (2008); *Aircraft & Diesel Equip. Corp. v. Hirsch*, 331 U.S. 752, 773-74 (1947).

V

**[15]** We hold that 20 U.S.C. § 1415(*l*) gives IDEA defendants an opportunity to plead non-exhaustion as an affirmative defense without limiting federal jurisdiction. We affirm the district court's dismissal of Payne's IDEA-based claim under 42 U.S.C. § 1983. We reverse its dismissal of her other § 1983 claims and remand for reconsideration under the standards we have articulated.

Costs on appeal are awarded to Payne.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

CALLAHAN, Circuit Judge, concurring:

I concur in the opinion, but write separately because I share the concern expressed by Judge Bea in his separate concurrence and dissent that our clarification of IDEA's exhaustion requirement, 20 U.S.C. § 1415(l), may be used to circumvent the requirement. Even under the "relief-centered" approach we adopt, it is not always possible to determine whether the alleged damages are separate and distinct from those covered by the IDEA. The solution to this dilemma may not lie solely in the dismissal of an ambiguous complaint or cause of action for failure to exhaust, but may be complemented by allowing a defendant school district to assert, even at trial, that an aspect of plaintiff's claim of damages would have been addressed in the administrative proceedings. Then, to the extent that the defendant meets its burden of demonstrating that the administrative processes would have addressed an aspect of the alleged damages, plaintiff would be denied any recovery for that aspect because that portion of his claim is unexhausted.

This approach differs in its critical aspects from the concept of mitigation. Although the statute states that an action may not be filed until administrative proceedings have been exhausted, it may not always be possible to determine, either at the pleadings stage or on a motion for summary judgment, whether some aspect of the alleged damages would have been addressed, in whole or in part, in administrative proceedings. Accordingly, lest the purpose of the exhaustion requirement be evaded, we should recognize that the scope of the unexhausted administrative proceedings may only become clear at trial. Of course, at that point in time it is impossible to literally enforce the exhaustion requirement. The lawsuit has been filed and presumably some aspects of the alleged damages would not have been addressed in the available administrative proceedings (otherwise the court would have already dismissed the action). In such a situation, the intent of the statute is best served by denying the plaintiff any recovery for any aspect of the alleged damages that the defendant school district shows would have been addressed in the administrative proceedings.

The school district has the burden of making the requisite factual showing that an aspect of a damage claim would have been addressed in the administrative proceedings, but it need not show that the administrative proceedings would have produced a solution. Rather, if the school district shows, to the requisite degree of certainty, that the administrative proceedings would have addressed an aspect of the plaintiff's alleged damages, the plaintiff may not recover for that aspect. In essence, if the factfinder determines that an aspect of plaintiff's claim for damages would have been addressed by the administrative proceedings, the plaintiff has failed to exhaust the administrative procedures for that aspect. Accordingly, to enforce the exhaustion provision, the plaintiff should be barred from seeking damages for that aspect of his or her claim. This is not mitigation in the sense of reducing damages based on a plaintiff's failure to prevent the harm, rather it enforces a statutory prerequisite to the entitlement to collect

the damages — engaging in the requisite pre-suit administrative proceedings.

The allegations in this case allow for an illustration of this approach. D.P.'s confinement to the "safe room" arose out of the parties relationship based on the IDEA. However, his confinement was also arguably a violation of D.P.'s constitutional rights irrespective of the parties' relationship under the IDEA. Our focus, however, is not on whether the alleged injury resulted from a violation of the IDEA or of the child's constitutional rights, but whether the "relief sought is also available under the IDEA." Maj. Op. 9751; *see also* Maj. Op. 9747-48.

The difficulty in measuring damages, is implicitly admitted in our direction to the district court to allow Payne "to amend her complaint in order to flesh out her specific claims and enable the court to determine which claims require IDEA exhaustion and which do not." Maj. Op. 9762. For example, we recognize that Payne's request for "general damages for extreme mental suffering and emotional distress" might not fall "within the purview of § 1415(*l*)," but will if "the 'emotional distress' stems from Payne's concern that D.P. was not receiving an adequate education." Maj. Op. 9766. It is not clear to what extent long term academic, psychological or emotional harms, must be addressed in the administrative proceedings. The majority holds that "[t]he IDEA's exhaustion requirement applies to claims only to the extent that the relief actually sought could have been provided by the IDEA." Maj. Op. p. 9750. It further holds that "exhaustion is required in cases where a plaintiff is seeking to enforce rights that arise as a result of a denial of a free appropriate public education." Maj. Op. p. 9752. Thus, although it may be "far from clear that the IDEA authorizes the provision of services designed to correct injuries caused by the school's past violation of other laws," (Maj. Op. p. 9761, *but see* Bea Con. p. 9774-75), the line between those aspects of damages which would have been addressed in administrative proceedings, and those

which would not, may be a factual issue that will have to be determined on a case by case basis.

Here, as noted by Judge Bea, much of the relief or damages Payne sought was arguably available under the IDEA. On the other hand, as all admit, to the extent that plaintiffs seek monetary damages for compensation for past pain and suffering, such relief is not available under the IDEA. *See* Maj. Op. 9765; Bea Con. pp. 9780-81 n.8. Furthermore, as the majority notes, the complaint "does not explicitly link each constitutional claim to a form of requested relief." Maj. Op. 9765. Although we direct the district court to scrutinize the complaint, we implicitly admit that the line between damages that are and are not addressable in IDEA administrative proceedings may not be clear. *See* Maj. Op. 9765-66. It follows that the district court may be able to use the IDEA's exhaustion requirement to narrow the complaint at the pleading stage, but may not be able to dispose of the case.

The danger is, as Judge Bea notes, that artful pleading may enable plaintiffs to circumvent the exhaustion requirement. *See* Bea Con. 9778-79. However, much of the incentive to do so will be dissipated if, at trial, the defendant may present evidence showing that the administrative proceedings under the IDEA, if utilized, would have addressed certain aspects of the claimed damages. This also recognizes the exhaustion requirement is akin to an affirmative defense, rather than a jurisdictional bar to the lawsuit.

Such an approach is consistent with the intent of the IDEA to encourage the parties to take advantage of the administrative proceedings. At the same time, it recognizes that just because a student is subject to the IDEA, he or she does not forfeit his or her other constitutional and statutory rights. Nonetheless, where (1) the alleged damages arise in the context of a relationship under the IDEA, (2) plaintiff did not exhaust the administrative proceedings under the IDEA, and (3) the measure of damages includes aspects that would have

been addressed in the administrative proceedings, then the exhaustion requirement should be construed as denying plaintiff any recovery for those aspects of the claim that it is determined — under the applicable standard of proof and by the appropriate factfinder — would have been addressed by the administrative proceedings.

---

BEA, Circuit Judge, joined by SILVERMAN and RAWLINSON, Circuit Judges, concurring in part and dissenting in part:

I respectfully dissent from what the majority calls its "clarification" of the "proper method for resolving IDEA exhaustion cases."[1] Maj. Op. at 9750. Rather than a clarification, I see it as a nullification of the congressionally mandated exhaustion requirement. The majority opinion clashes with the clear language of the IDEA, which requires administrative exhaustion "*before* the filing of a civil action . . . seeking relief that is *also available* under [the IDEA]." 20 U.S.C. § 1415(l) (emphasis added). The majority's approach is also inconsistent with the core purposes of IDEA exhaustion: allowing state and local agencies "the exercise of discretion and education expertise," giving agencies "the first opportunity to correct shortcomings in their educational programs for disabled children," and allowing "full exploration of technical

---

[1]In light of *Jones v. Bock*, 549 U.S. 199 (2007), and *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010), I concur in the majority's determination that the IDEA's exhaustion requirement is non-jurisdictional. I note, however, that it was unnecessary to reach the jurisdictional issue in this case. Here, defendants raised Payne's failure to exhaust administrative remedies as an affirmative defense in the district court. Therefore— regardless whether the IDEA's exhaustion requirement is jurisdictional or must be raised as an affirmative defense—it is clear that the exhaustion issue in this case was properly before the district court. Because this court did reach the jurisdictional question, however, I concur in its analysis of the issue.

educational issues." *Hoeft v. Tucson Unified Sch. Dist.*, 967
F.2d 1298, 1303 (9th Cir. 1992). Finally, the newly-restricted
exhaustion requirement will allow plaintiffs—through games-
manship and cleverly-crafted pleadings—to subject school
districts to civil liability for money damages, without first giv-
ing school districts the opportunity to remedy the plaintiff's
injuries under the IDEA.

Moreover, in remanding this case to the district court to
parse the Paynes' complaint, the majority ignores the proce-
dural posture of this case. This case comes to us on appeal of
the district court's grant of summary judgment to the school
district. The school district presented evidence, in the form of
deposition testimony from plaintiff Windy Payne, which
proved the Paynes sought relief which was "also available"
under the IDEA—thus triggering the IDEA's exhaustion
requirement. 20 U.S.C. § 1415(l). In contrast, the Paynes
presented no evidence *at all* to raise a triable issue of material
fact as to whether the relief they sought was not "also avail-
able" under the IDEA, nor any evidence *at all* that recourse
to the remedies provided in the IDEA would be futile. A mov-
ing party is entitled to summary judgment if the non-moving
party fails to present, by affidavits, depositions, answers to
interrogatories, or admissions "specific facts showing that
there is a genuine issue for trial." *Celotex Corp. v. Catrett,*
477 U.S. 317, 324 (1986). I would not remand to the district
court to parse Paynes' complaint for allegations of facts, evi-
dence of which facts the Paynes themselves did not present in
their opposition to summary judgment. This is an appeal from
an order under Rule 56 of the Federal Rules of Civil Proce-
dure, not an appeal from a 12(b)(6) order. I would affirm. For
these reasons, I dissent.

I.

With respect, the majority opinion begins by misreading
the IDEA's exhaustion provision, codified at 20 U.S.C.
§ 1415(l). The majority reads § 1415(l)—which requires a

plaintiff to exhaust administrative remedies if the plaintiff is "seeking relief that is also available under" the IDEA—to mean that exhaustion is required only if a plaintiff *specifically* alleges violations of substantive IDEA rights, or their "functional equivalent." According to the majority, "whether a plaintiff *could have* sought relief available under the IDEA is irrelevant—what matters is whether the plaintiff *actually* sought relief available under the IDEA." Maj. Op. at 9751 (emphasis in original). Therefore, according to the majority, courts charged with "determining whether the IDEA requires a plaintiff to exhaust . . . should start by looking at a complaint's prayer for relief and determine whether the relief sought is also available under the IDEA. If it is not, then it is likely that § 1415(l) does not require exhaustion." Maj. Op. at 9751. The majority sees "relief that is available" under the IDEA as restricted to three situations: 1) when a claim is based upon alleged violations of a plaintiff's substantive IDEA right to a Free Appropriate Public Education (FAPE); 2) when a plaintiff seeks an IDEA remedy, or the "functional equivalent of an IDEA remedy under a different law" (for example, when a plaintiff seeks recompense for a private school education under the Americans with Disabilities Act, or explicitly measures its calculation of damages as the cost of academic tutoring or psychological counseling); and 3) when a plaintiff seeks injunctive relief to alter a child's individualized education program (IEP) or educational placement.[2] Maj. Op. at 9751-52.

As an initial matter, the majority's limited exhaustion requirement is inconsistent with the plain text of § 1415(l). Section 1415(l) does not state that exhaustion is required only for relief that is premised upon an alleged violation of the plaintiff's substantive IDEA rights, seeks the functional equivalent of an IDEA remedy, or seeks injunctive relief after

---

[2]An IEP is a document which sets educational goals and specifies an instructional plan for disabled students. 34 C.F.R. § 300.320. An IEP must be reviewed and renewed at least annually. *Id.*

IDEA remedies have been effected. Rather, § 1415(l) simply and broadly states that exhaustion is required if a plaintiff seeks relief that is "also available" under the IDEA. The IDEA requires public schools to provide disabled students with a "free appropriate public education." A "free appropriate public education" includes not just "an appropriate preschool, elementary school, or secondary school education," but also "related services" which include counseling and psychological services. *See* 20 USC § 1401(26). Thus, if a disabled student brings suit seeking monetary damages to compensate him for his academic regression or psychological injuries which he claims persist after the completion of a school district's claimed wrongful act or omission, relief for those injuries is "also available" *in kind* under the IDEA, because the "related services" provided under the IDEA— academic services, psychological counseling and therapy— may cure, alleviate, or mitigate such injuries. In such a case, the plain text of § 1415(l) requires a plaintiff to exhaust the IDEA's administrative procedures which may lead to the provision of curative or palliative "related services" *before* filing a civil suit.

The majority's skepticism that the "IDEA actually authorizes relief designed to correct the effects of misconduct by the school" is misplaced. Maj. Op. at 9760-61. The majority notes that the IDEA defines "related services" as services which "may be required to assist a child with a disability *to benefit from special education*" *id.* (quoting 20 U.S.C. § 1401(26)(A)), and posits that the IDEA does not require schools to alleviate academic and psychological damage *to a child which is caused* by the school. *Id.* But this reading of the IDEA makes little sense. The statute plainly holds that if a child requires "related services" to benefit from special education, those services must be provided. Nothing in the statute requires any inquiry as to *why* those services are required. Thus, if a child suffers from crippling anxiety at school, and that anxiety must be alleviated before he can learn (or, in the words of the statute, "benefit from special education"), the

IDEA plainly requires psychological services be provided. It makes no difference whether that anxiety was caused by the school or whether it was caused by some external factor.

Of course, § 1415(l) does not require IDEA exhaustion for *all* lawsuits brought by disabled students who allege academic or psychological injuries—only for those lawsuits seeking relief for those injuries which may be cured or alleviated by the "related services" provided through IDEA's administrative process. As we held in *Witte v. Clark County School District*, 197 F.3d 1271 (9th Cir. 1999), plaintiffs need not exhaust IDEA remedies if they seek damages for "retrospective" psychological injuries. *Id.* at 1276. For example, had the Paynes sought monetary damages for the claimed past and temporary emotional and psychological trauma D.P. suffered while locked in the isolation room, IDEA exhaustion would not have been required. This is so because when the damages sought are for purely retrospective injuries, relief is not "also available" under the IDEA: no amount of academic or counseling services could possibly alleviate the past, but temporary, fright D.P. might claim he felt inside the isolation room. Neither could IDEA's "related services" cure or alleviate the pain and suffering D.P. might have suffered in the "isolation room" and for a few days thereafter, had he sprained his ankle while locked inside. As this court held in *Witte*, the "remedies available under the IDEA would not appear to be well suited to addressing past physical injuries adequately." *Id.* at 1276.

On the other hand, when a plaintiff seeks monetary damages to compensate for the academic and psychological *after-effects* of a school district's wrongful act or omission in the provision of education, relief is necessarily available under the IDEA. Here, for example, intensive individualized tutoring might well have alleviated D.P.'s claimed academic regression. Psychological counseling might also have eliminated the nightmares from which the Paynes contend D.P. suffered as a result of the district's use of the "isolation room" in which it placed D.P. And relief for such academic regres-

sion and nightmares is "also available" under the IDEA if the
regression and nightmares are likely to continue.[3] Here—as
discussed in further detail below—the Paynes sought damages
for the past and ongoing academic and psychological *aftereffects* of D.P.'s claimed mistreatment by the school district.
In such cases, the plain text of § 1415(l) requires a plaintiff
to exhaust the IDEA's administrative procedures before filing
a civil suit.[4]

The majority expresses concern that this "muscular" view
of § 1415(l) "penalize[s] disabled students for their disability," Maj. Op. at 9762, "preempt[s] all cases involving the mistreatment of disabled students by a school," *id.*, and

---

[3]Plaintiffs can also avoid the IDEA's exhaustion requirement if they can
prove that recourse to the IDEA's administrative procedures would have
been futile or inadequate. For example, parents who seek monetary damages as compensation for the out-of-pocket expenses they paid for a specialized form of private tutoring or private psychological counseling could
avoid the IDEA's exhaustion requirement if they prove that such tutoring
or counseling was 1) necessary, and 2) could not have been provided by
the school district. The party alleging futility of IDEA procedures bears
the burden of proving its futility. *Doe v. Arizona Dep't of Educ.*, 111 F.3d
678, 681 (9th Cir. 1997). This exception to the exhaustion requirement
does not apply to the Paynes, as they presented no evidence of futility; of
course, neither did the school district. *See infra* at pages 9783-84.

[4]The majority contends this plain reading of § 1415(l) is somehow
inconsistent with *Witte*, because the court in *Witte* could have *speculated*
that the child—who alleged only retrospective physical injuries—*also*
could have alleged ongoing psychological harm. *See* Maj. Op. at 9760-61.
This is wrong: § 1415(l) requires exhaustion only when a plaintiff is
"*seeking* relief that is also available under [the IDEA]." 20 U.S.C.
§ 1415(l) (emphasis added). If, as in *Witte*, a plaintiff does not allege academic or psychological injuries—and thus is not *seeking* academic or psychological relief—§ 1415(l) obviously does not permit a court to *invent*
such injuries for the plaintiff. Here, per the plaintiff's own complaint and
deposition testimony, the *only* relief sought was academic and psychological relief which is "also available under the IDEA." I would hold that
exhaustion is required only where academic or "related services" could
correct the injuries *claimed* by the plaintiff, not where such services could
also correct injuries which are purely conjectural.

"temporarily shield[s]" school officials from liability for violations of constitutional and statutory rights. *Id.* at 9752. Not at all. First, my reading of § 1415(l) does not preempt all cases involving disabled students harmed by a school. Contrary to the majority's assertion, I embrace *Witte*, which eschews preemption in cases where plaintiffs seek compensation only for physical or retrospective injuries. *See Witte*, 197 F.3d at 1276. Moreover, any shield imposed by the exhaustion requirement is of very limited duration. Due process complaints under the IDEA must be heard and decided within 45 days. 34 C.F.R. § 300.515(a). And so long as plaintiffs exhaust their IDEA remedies, nothing prevents them from subsequently bringing civil claims based upon violations of constitutional or statutory rights. Thus, § 1415(l) does not absolve school districts of civil liability for injuries which could not be remedied or palliated by IDEA's "related services." Instead, it codifies a recognition that the education of disabled children is a complex endeavor, calling for much individual attention, and that a misjudgment in a child's IEP —or a mistake in execution of that plan—can result in unexpected academic and psychological injuries. For that reason, in cases where "both the genesis and the manifestations of the problem are educational," *Blanchard v. Morton Sch. Dist.*, 420 F.3d 918, 921 (9th Cir. 2005), § 1415(l) requires potential plaintiffs first to give school districts the opportunity to correct the effects of their claimed educational mistakes under the IDEA's administrative process, before recasting claims arising from acts or omissions related to educational efforts as violations of constitutional and statutory rights, with compensation sought in money damages. Far from *penalizing* disabled students, § 1415(l) provides a fast, efficient way to redress such students' academic and psychological injuries, as an alternative to civil litigation which may drag on for years.

In contrast, the eviscerated exhaustion requirement articulated by the majority elevates the form of plaintiffs' pleadings over their substance.[5] Consider, for example, a disabled child

---

[5]As discussed in greater detail below at pages 9773-74, for the majority to thus frame the issue was especially incorrect here, since the issue here

who seeks monetary damages because a school district's implementation of some educational program resulted in a claimed failure adequately to instruct him in reading.[6] Such a child could allege either: 1) the school district failed to provide a "free appropriate public education" as required by the IDEA, 20 U.S.C. § 1401(9), or, as the plaintiffs here claim, 2) the school district's actions caused the child's "academic prowess and abilities" to be diminished, entitling the child to general and special damages for his emotional and psychological pain and suffering. Although the facts underlying both of these claims would be identical, the majority holds that the IDEA requires exhaustion of administrative remedies *only* if the plaintiff styles his complaint as a failure to provide a "free appropriate public education" under the IDEA, or explicitly measures damages as the cost of counseling, tutoring, or private schooling. Only *then*, according to the majority, is the

---

does not involve the adequacy of the plaintiffs' pleadings, but the adequacy of the *evidence* adduced by the parties to establish or eliminate triable issues of material fact. The district court entertained and ruled on a Rule 56 motion, not a Rule 12(b)(6) motion.

[6]The majority contends that "a claim for failure to adequately instruct a student in reading can arise only under the IDEA because there is no other federal cause of action for such a claim." Maj. Op. at 9759-60. With respect, the majority underestimates the potential creativity of plaintiffs' attorneys. Consider, for example, a child whose IEP provides that he should spend 30 minutes each school day reading independently in a quiet room by himself. If that child were to suffer anxiety and claustrophobia while in the quiet room—leading to a regression in his reading scores—he might sue the school district under § 1983 for improper detention in violation of the Fourth Amendment and seek compensation for his *academic* injuries. Indeed, such a case would be largely analogous to the facts in *Robb v. Bethel School District #403*, 308 F.3d 1047 (9th Cir. 2002), in which the plaintiff sought monetary damages for academic injuries which resulted from a child's participation in "peer tutoring" sessions which took place on the floor of a dimly-lit hallway. As I read the majority, so long as an alleged violation is *cast* as a federal Constitutional or statutory claim, the plaintiffs are not required to exhaust their administrative remedies—regardless whether the claim is actually based upon the school district's failure adequately to instruct the child.

claim based upon "either the IDEA . . . or its substantive standards." *See* Maj. Op. at 9752. The majority opinion thus effectively serves as a roadmap for plaintiffs who wish to avoid § 1415(l)'s exhaustion requirement and any curative or palliative services the school district could offer to eliminate or reduce damages, but would rather obtain a money award in a federal court. So long as a complaint which seeks monetary damages does not mention a specific provision of the IDEA, demand a remedy specifically provided by it, or seek injunctive relief to modify an implemented IEP, the majority holds there is no need to exhaust administrative remedies which could remedy the harm done to a disabled child through the school's mistakes in implementing the child's education. Thus, the majority largely nullifies § 1415(l) by providing plaintiffs with an easy end-run around the exhaustion requirement. It does not take a crystal ball to foresee the result. Would a plaintiff's attorney rather 1) state a claim for the provision of in-kind services under the IDEA, and if successful, be paid in court-supervised attorney' fees, *see* 20 U.S.C. § 1415(i)(3)(B), or 2) seek monetary damages under a contingent fee contract with the parents?

The majority incorrectly insists that our previous "injury-centered" approach to exhaustion was inconsistent with § 1415(l)'s requirement that plaintiffs exhaust administrative remedies if a plaintiff is "*seeking* relief that is also available under [the IDEA]." 20 U.S.C. § 1415(l) (emphasis added). According to the majority, the phrase "seeking relief" suggests that "whether a plaintiff *could have* sought relief available under the IDEA is irrelevant—what matters is whether the plaintiff *actually* sought relief available under the IDEA." Maj. Op. at 9751 (emphasis in original). But this interpretation of the phrase "seeking relief" is inconsistent with this court's prior determination that a plaintiff cannot circumvent the IDEA's exhaustion requirement by seeking only monetary damages. *Robb*, 308 F.3d 1047 at 1050. Although monetary damages are not ordinarily available under the IDEA, we have joined at least five sister circuits to hold that a prayer for mon-

etary damages does not automatically excuse the IDEA's exhaustion requirement. *Id.*; *see also Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 64 (1st Cir. 2002); *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 916 (6th Cir. 2000); *Padilla v. Sch. Dist. No. 1 in the City and County of Denver, Colo.*, 233 F.3d 1268, 1274 (10th Cir. 2000); *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 993 (7th Cir. 1996); *N.B. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996). Thus—because a plaintiff who includes an education-related prayer for monetary damages necessarily does not "actually" seek relief available under the IDEA—we, and our sister circuits, have held that what "matters" for exhaustion purposes is *precisely* whether a plaintiff "could have" sought relief for the claimed injuries, which relief is also available under the IDEA through in-kind services. The majority opinion does not overturn this aspect of our IDEA jurisprudence;[7] this leaves us with a puzzling inconsistency. On the one hand, as the majority holds today, the phrase "seeking relief" requires courts to look *solely* at what form of relief the plaintiff "actually sought." On the other hand, courts will look necessarily to what sort of relief a plaintiff "could have" sought in complaints which seek damages measured in the cost of services available in-kind under the IDEA, or which seek monetary damages for claims which are explicitly based upon alleged violations of a plaintiff's substantive IDEA rights,[8] Maj. Op. at 9751-52, 9754-55.

---

[7]The majority holds that a plaintiff's prayer for monetary damages does not *automatically* excuse the IDEA's exhaustion requirement. For example, if "the measure of a plaintiff's [monetary] damages is the cost of counseling, tutoring, or private schooling — relief available under the IDEA — then the IDEA requires exhaustion." Maj. Op. at 9754. The majority holds the exhaustion requirement also applies if a plaintiff "seeks damages to fund a private education (without mentioning the IDEA)." *Id.* Because such claims explicitly seek the "functional equivalent" of an IDEA remedy, the majority holds relief is "also available" under the IDEA. I agree the exhaustion requirement applies in such cases; I do not, however, read § 1415(l) so narrowly.

[8]Consider, for example, one situation in which the majority holds that "exhaustion is clearly required": where a plaintiff files a claim for dam-

Finally, the majority opinion undermines the sound princi-
ples behind the exhaustion requirement. We have previously
held that the IDEA's exhaustion requirement "recognizes the
traditionally strong state and local interest in education,
allows for the exercise of discretion and educational expertise
by state agencies, affords full exploration of technical educa-
tional issues, furthers development of a factual record and
promotes judicial efficiency by giving state and local agencies
the first opportunity to correct shortcomings." *Kutasi v. Las
Virgenes Unified Sch. Dist.*, 494 F.3d 1162, 1167 (9th Cir.
2007). In addition, because due process complaints under the
IDEA must be heard and decided within 45 days, 34 C.F.R.
§ 300.515(a), the IDEA's expedited timetable encourages
quick and efficient resolution of disputes. Yet the majority's
curtailment of the exhaustion requirement promotes none of
these goals. On the contrary, the weakened exhaustion
requirement will bode to flood federal courts with IDEA
cases, before a local agency has had an opportunity to resolve
the dispute. Federal judges and juries—not education experts
—will be asked to serve as "ersatz school administrators,"
Maj. Op. at 9752, and make determinations about what money

---

ages under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794,
premised on a denial of a plaintiff's IDEA rights. *See* Maj. Op. at 9751-52.
If such a claim seeks only monetary damages, the plaintiff has not "actu-
ally sought relief available under the IDEA," because the IDEA does not
provide for monetary damages. But in such a case, the majority (rightly)
requires exhaustion, because the substantive rights at issue are clearly
premised on the IDEA—and *could have* been resolved using the IDEA's
administrative procedures. In that situation, the phrase "seeking relief"
does not bar courts from looking to whether the plaintiff "could have"
sought relief available under the IDEA. I am puzzled as to how the major-
ity concludes that the same phrase bars courts from looking to whether a
plaintiff "could have" sought in-kind relief under the IDEA where, as
here, the plaintiffs claim only academic and psychological injuries which,
at least as to future academic and psychological injuries, could be elimi-
nated, attenuated, or mitigated by IDEA-provided "related services." Such
"related services" are indeed similar to those which plaintiff Windy Payne
testified had been effective to return her son to being a "happy boy." *See
infra* at 9781-82 for further discussion.

damage awards are necessary to prevent or alleviate academic, psychological, or emotional harm. And disabled children whose academic and psychological injuries might have been quickly cured or mitigated by in-kind services supplied by a school district under the IDEA may have to wait until the resolution of a potentially lengthy civil lawsuit to receive a monetary balm.

## II.

Recognizing, perhaps, that its reading § 1415(l) could financially burden school districts by requiring them to reimburse plaintiffs for palliative services the school districts could have cost-effectively provided in-kind, the majority rewrites § 1415(l)—an exhaustion statute—as a mitigation statute. The majority concludes that after a court determines exhaustion was not required, a defendant subsequently should "be permitted to provide evidence showing that the relief being sought by that plaintiff was, in fact, available under the IDEA" and "withhold [remedies] that are unexhausted and available under the IDEA."[9] Maj. Op. at 9764. I am puzzled as to how the majority can so interpret § 1415(l). Section 1415(l) is not a "collateral source" doctrine which would permit defendant school districts to submit evidence proving a plaintiff's monetary damages would have been reduced had plaintiffs availed themselves of remedies also available under the IDEA. It is thus distinguishable from, for example, the collateral source provision of California's Medical Injury

---

[9] Judge Callahan makes a nearly identical point in her concurrence, concluding that "the dismissal of an ambiguous complaint or cause of action for failure to exhaust . . . may be complemented by allowing a defendant school district to assert, even at trial, that an aspect of plaintiff's claim of damages would have been addressed in the administrative proceedings. Then, to the extent that the defendant meets its burden of demonstrating that the administrative processes would have addressed an aspect of the alleged damages, plaintiff would be denied any recovery for that aspect because that portion of his claim is unexhausted." Callahan Concurrence at 9767.

Compensation Reform Act (MICRA), Cal. Civ. Code
§ 3333.1. MICRA permits health care providers who are sued
for personal injuries allegedly caused by medical malpractice
to mitigate damages by "introduc[ing] evidence of any
amount payable to the plaintiff as a result of the personal inju-
ry" from outside sources, including the Social Security Act,
worker's compensation schemes, and private insurance plans.
Cal. Civ. Code § 3333.1(a). In contrast, § 1415(l) does not
provide for the introduction of mitigating evidence at a hear-
ing to assess damages. To the contrary, § 1415(l) very clearly
states:

> "*before the filing of a civil action* under such laws
> seeking relief that is also available under [the
> IDEA]," the [administrative] procedures . . . *shall be
> exhausted* to the same extent as would be required
> had the action been brought under [the IDEA]."

20 U.S.C. § 1415(l) (emphasis added).

The majority's attempt to turn § 1415(l) into a mitigation
statute is thus belied by the plain text of the law. If the defen-
dant is permitted *at trial* to "provide evidence showing that
the relief being sought by that plaintiff was, in fact, available
under the IDEA," Maj. Op. at 9764-64, then such evidence
was "also available" before the action was filed. After all, evi-
dence that the school district could have provided palliative
academic or psychological services under the IDEA is
relevant—for mitigation purposes—only if those services
could have reduced plaintiffs' damages. To reduce plaintiffs'
damages, such services must have been "also available" to the
plaintiff. And *if* relief is "also available" to a plaintiff under
the IDEA, § 1415(l) requires a plaintiff to *exhaust* his reme-
dies under the IDEA *"before the filing of a civil action."* 20
U.S.C. § 1415(l) (emphasis added). There is not a word in
§ 1415(l) about mitigation, nor anything which permits a
school district to introduce evidence that relief was "also

available" under the IDEA at trial for the purpose of reducing a monetary award to plaintiffs at trial.

Indeed, contrary to the majority's conclusions, Section 1415(l) creates a system quite different from a common-law system of mitigation. Were common-law mitigation to apply, the trier-of fact would determine what palliative academic or psychological expenses—if any—could have been avoided by using the school district's "also available" services, and reduce damages accordingly. But § 1415(l) does *not* leave that determination to the trier-of-fact at trial. Instead, § 1415(l) requires those "also available" services to have been solicited, attempted, and used *before* any reimbursement is sought. The purpose of § 1415(l) is to have the "also available" public services *actually* used, outside the courtroom, to produce their practical effect on the disabled child. Section 1415(l) does *not* provide for the monetary value of unused services to be determined as a hypothetical, debated in the courtroom.

Thus, contrary to the majority's conclusion, § 1415(l) does not require a defendant school district to introduce evidence of how the in-kind services plaintiffs chose not to pursue *could* have mitigated a plaintiff's injuries. Instead, in enacting § 1415(l), Congress was exceedingly clear: plaintiffs must *actually* exhaust IDEA remedies *before* bringing a suit for which relief is "also available" under the IDEA.

### III.

In light of its newly-articulated, restricted exhaustion requirement, the majority remands this case for the district court to determine which "constitutional" claims in the Paynes' complaint need not be exhausted. But the majority's narrow focus on the Paynes' complaint overlooks the fact that this case is an appeal from a grant of summary judgment, and that *all* of the facts presented to the district court indicated the Paynes *were* seeking at least some relief that was "also available" under the IDEA—even under the majority's narrow

reading of the phrase. Because the school district presented evidence (mainly in the form of plaintiff adverse-party Windy Payne's deposition) that the Paynes sought relief that was "also available" under the IDEA—and because the Paynes presented no evidence to the contrary—the school district was entitled to summary judgment as a matter of law. *See Celotex*, 477 U.S. at 324 (on a motion for summary judgment, non-moving party must "designate specific facts showing that there is a genuine issue for trial" (quoting Fed. R. Civ. P. 56(e)).

In its motion for summary judgment, the school district properly raised an affirmative defense which contended the Paynes' lawsuit should be dismissed because the Paynes sought relief that was "also available" under the IDEA and had not exhausted their administrative remedies.[10] In support of its motion for summary judgment, the school district produced a July 21, 2006 deposition of D.P.'s mother, Windy Payne, in which she testified the Paynes were seeking monetary relief for D.P. not for the retrospective *temporary* emotional trauma D.P. experienced while in the isolation room, but for 1) the expenses of private doctors and therapists who had treated D.P. to right the wrongs done him by use of the isolation room, and 2) for treatment and cure of past and ongoing academic, psychological, and emotional difficulties caused by use of the isolation room. Windy Payne testified that she sought damages for the "lack of [D.P.'s] education,"

---

[10]The school district's motion for summary judgment conceded that had the Paynes sought *retrospective* relief for the school district's alleged Constitutional violations, the Paynes' failure to exhaust "would not be fatal" under *Witte v. Clark County School District*, 197 F.3d 1271, 1276 (9th Cir. 1999). For example, had the Paynes sought monetary damages to recompense D.P. for the past and temporary emotional trauma he experienced *while* locked inside the safe room, exhaustion would not have been required, because the academic and psychological in-kind services provided for by the IDEA cannot remedy such past injuries, any more than they could remedy the pain and suffering from the hypothetical now-cured sprained ankle earlier mentioned.

the "emotional trauma that [D.P.] and I have suffered, and the impact that it has had on our lives and *continues to have*." (emphasis added). She stated that the damages sought were for everything D.P.'s parents had done—including provision of private doctors and therapists to make him a "happy boy again." Part of the measure for those damages, according to Windy Payne, was the out-of-pocket expenses the Paynes had paid "for lots of doctors and lots of therapy."

In other words, Windy Payne's deposition established that the Paynes sought money damages for the past and ongoing academic and psychological *aftereffects* of the school district's use of the isolation room. Windy Payne testified the Paynes sought damages: 1) to compensate D.P. and his parents for the emotional trauma that required the Paynes to seek professional psychological services (the private doctors and therapists) and, 2) to provide treatment and services for D.P.'s *ongoing* academic, emotional, and psychological injuries, and the parents' continued emotional trauma which derived from those injuries. Relief from the academic and psychological aftereffects of the school district's use of the isolation room was "also available" under the IDEA. The school district could have provided—under the "related services" provision of the IDEA, 20 U.S.C. § 1401(26)—the *past* psychological counseling the Paynes purchased for D.P. on the private market. And the school district can now provide *ongoing* academic and psychological services to alleviate the damage done to D.P. in the isolation room. Thus, unlike the plaintiffs in *Witte*, 197 F.3d at 1276, Windy Payne's testimony establishes that the Paynes were *not* seeking only *retrospective* damages for injuries that the IDEA could not palliate. Windy Payne did not, for example, testify that she sought monetary compensation for the fright D.P. felt *while* locked in the isolation room—a completed retrospective injury no in-kind academic or psychological services could have remedied. Nor did Windy Payne testify that she sought compensation for some physical injuries which resulted from the school district's use of the isolation room. Instead, Windy Payne's testimony

establishes the Paynes sought monetary compensation for the academic and psychological aftereffects of the school district's use of the isolation room—which aftereffects could have been remediated or palliated by the in-kind services specified in the IDEA.

Moreover, the Paynes' complaint *itself* supports the school district's contention—and the district court's determination on summary judgment—that the Paynes sought *only* relief which had been and is "also available" in-kind, under the IDEA.[11] The Paynes' complaint specifically alleged the following injuries were sustained by their son as a result of his mistreatment: "significant regression in communicative and sensory functions," diminished "*academic* prowess and abilities," and "*continue[d]* . . . signs of emotional trauma." (emphasis added). The complaint further sought "general damages for extreme mental suffering and emotional distress and special damages in an amount to be proven at trial." There was nothing in the complaint to indicate the Paynes sought damages for anything other than the past and ongoing academic and psychological aftereffects of D.P.'s time in the isolation room, and the derivative trauma his parents experienced as a result.[12]

---

[11]In its motion for summary judgment, the school district did not quote the portions of the Paynes' complaint which dealt with D.P.'s injuries or which put forward a prayer for relief. However, the district court explicitly considered the language of the complaint in its order granting the school district's motion for summary judgment. The district court was within its discretion to do so: Federal Rule of Civil Procedure 56(c)(1)(3) provides that in considering a motion for summary judgment, a district court "need consider only the cited materials, but it may consider other materials in the record." The Paynes' complaint was admissible in evidence as the admission of a party litigant. Fed. R. Evid. 801(d)(2). Its allegations of fact supported the school district's motion for summary judgment, because the Paynes' complaint supported the school district's contention that the Paynes sought only relief which was also available under the IDEA.

[12]Moreover, even *had* the allegations in the complaint stated that the Paynes sought relief for something other than the academic and psychological aftereffects of D.P.'s time in the isolation room, those allegations

In opposition to the school district's motion for summary judgment—and the evidence adduced by the school district in its moving papers—the Paynes produced no declarations, affidavits, depositions, or other discovery material to attempt to prove they sought relief for anything other than the past and ongoing aftereffects of D.P.'s academic, emotional, and psychological injuries arising from the claimed education-related mistreatment. Indeed, the Paynes did not even *contend* they sought damages for injuries that could not be redressed in kind under the IDEA. Instead, the Paynes relied solely on a since-overruled Third Circuit case which held that an IDEA claim need not be exhausted if it seeks monetary damages,[13] *see W.B. v. Matula*, 67 F.3d 484, 496 (3d Cir. 1995)—a theory this court has squarely rejected, and continues (at least in form) to reject. *Robb*, 308 F.3d 1047 at 1050; *see* Maj. Op. at 9754-55.

In addition, the Paynes contended IDEA exhaustion would be futile, because they were not seeking any changes to D.P.'s IEP, and because they did not raise any claim which sounded specifically in the IDEA. But the Paynes had the burden of proof to prove the futility or inadequacy of IDEA procedures,

---

would be trumped by Windy Payne's deposition testimony to the contrary. On a motion for summary judgment, depositions of a party trump the allegations of his or her complaint. *See* Fed. R. Civ. P. 56(c)(1)(A); *Taylor v. List,* 800 F.3d 1040, 1045 (9th Cir. 1989) (nonmoving party cannot avoid summary judgment by relying solely on allegations that are unsupported by factual data); *Dismore v. Aetna Casualty & Surety Co.*, 338 F.2d 568, 571 (7th Cir. 1964) ("allegations of the complaint are not controlling where controverted by depositions"). Thus, on motion for summary judgment, the unverified complaint can provide only factual evidence—admissions—*against* plaintiffs; never *for* plaintiffs.

[13]The majority correctly notes that the Third Circuit case on which the Paynes relied has been overruled by *A.W. v. Jersey City Public Schools*, 486 F.3d 791 (3d Cir. 2007), and that every other circuit to address the issue has held that limiting requested relief to damages alone is not enough to avoid the exhaustion requirement of the IDEA. *See* Maj. Op. at 9748 n. 3.

*Doe v. Arizona Dep't of Educ.*, 111 F.3d 678, 681 (9th Cir. 1997), and the Paynes presented no evidence to prove it would have been futile for them to pursue the academic and counseling services the school district was required to provide, or that such services would have been useless to D.P. Indeed, Windy Payne's own deposition testimony—in which she stated that the family had taken D.P. to therapists to alleviate his psychological injuries—suggests that D.P.'s injuries *were* at least partially remedied by in-kind counseling services; counseling services which, for aught that appears, the district was perfectly capable of providing through IDEA, had the Paynes pursued the administrative remedies provided under Sec. 1415(f) and (g).

Thus, all of the evidence before the district court on the motion for summary judgment showed that relief for what the record evidence proved were D.P.'s injuries was "also available" in kind under the IDEA, and there was no proof—none at all—that seeking relief through the administrative process would have been futile. The school district could have remedied or mitigated D.P.'s injuries through tutoring, counseling, or other educational or psychological remedies, much as Windy Payne testified her doctors and therapists did in returning D.P. to being "a happy boy again." And if D.P.'s underlying *injuries*—at least some of them—could have been remedied or mitigated through the IDEA's administrative process's provision of services, so too could the pain and suffering arising from those injuries for which his parents now seek recompense.[14]

---

[14]The majority opaquely suggests that exhaustion in this case would be required if the Paynes' "emotional distress stem[med] from Payne's concern that D.P. was not receiving an adequate education." Maj. Op. at 9766. However, the majority further holds that exhaustion is *not* required if the Paynes' "emotional distress" stemmed from "injuries resulting from Fourth or Eighth Amendment violations committed by school officials." *Id.* Here, the *only* injuries alleged with reference to *facts*—which factual allegations are proof against the plaintiff per Federal Rule of Evidence

## IV.

Before bringing this suit in federal court—and sparking this protracted litigation which has now dragged on for six years—the Paynes should first have exhausted their administrative remedies and sought relief that was "also available" under the IDEA, as required by the plain text of § 1415(l). Indeed, even under the majority's narrow reading of § 1415(l), the evidence submitted by the parties supported the district court's grant of summary judgment to the school district. The majority holds that "[i]f the measure of a plaintiff's damages is the cost of counseling, tutoring, or private schooling — relief available under the IDEA — then the IDEA requires exhaustion." Maj. Op. at 9754. Here, Windy Payne has explicitly stated in her deposition that she sought reimbursement for the cost of the counseling and psychological services needed to make D.P. a "happy boy again." The Paynes submitted no evidence to suggest this was not *a* measure of the damages they sought. Thus, even under the majority's newly-articulated exhaustion requirement, the district court's grant of summary judgment should be affirmed.[15]

---

801(d)(2)—by D.P. resulting from Fourth or Eighth Amendment violations *were* academic and psychological injuries, which could have been redressed under the IDEA. The difficulty—if not impossibility—of distinguishing between "concern that a child was not receiving an adequate education" on the one hand, and concern over academic "injuries resulting from Fourth or Eighth Amendment violations" on the other, is a further reason I favor our previous exhaustion approach to the one articulated by the majority. The concrete claims of injury carry greater weight, in making decisions, than do abstract claims of constitutional violations.

[15]Under § 1415(l), the district court could not simply hold that *some* measures of damages must be exhausted and some measures need not be, such that any final award of damages would be reduced by the unexhausted amount. Section 1415(l) specifically provides that IDEA exhaustion is required "*before the filing of a civil action.*" Thus, § 1415(l) serves as an absolute bar to lawsuits which seek *any* relief that is "also available" under the IDEA. Section 1415(l) is not a cap on damages, and does not, by its terms, permit a court selectively to exclude recovery for any injury

Therefore, I would affirm the district court's grant of summary judgment to the school district in its entirety.

---

or harm that would have been covered by the administrative proceedings under the IDEA. If there are *any* claims for relief made as to which no triable issue of fact exists but that the relief is "also available" under the IDEA, the complaint must be dismissed as having been prematurely filed before the required administrative exhaustion.