1

2

3

4

5

HONORABLE RONALD B. LEIGHTON

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| 9  WINDY PAYNE, individually and as<br>guardian on behalf of D.P., a minor child,<br><br>10  Plaintiff,<br><br>11  v.<br><br>12  PENINSULA SCHOOL DISTRICT, a<br>municipal corporation; ARTONDALE<br>13  ELEMENTARY SCHOOL, a municipal<br>corporation; JODI COY, in her individual<br>14  and official capacity; JAMES<br>COOLICAN, in his individual and official<br>15  capacity; JANE DOES 1-10; and JOHN<br>DOES 1-10,<br>16<br>Defendant. | CASE NO. 3:05-CV-05780<br><br>ORDER ON DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT<br><br>[DKT. #113] |

17

18       This matter is before the court on the Defendants' Motion for Summary Judgment (Dkt.

19  #113).  The case involves the Defendant school teacher's use of a "safe room" with a seven year

20  old autistic child when he became disruptive in class.   The issue is whether the District and its

21  officials violated D.P.'s constitutional rights by subjecting him to the safe room, and if so,

22  whether they are nevertheless entitled to qualified immunity.

23

24

1    Plaintiffs are the student, D.P., and his mother, Windy Payne.  They sued the teacher,

2    Jodi Coy, and the school district for violating D.P.'s Fourth and Fourteenth Amendment rights in

3    their use of the safe room.  Coy and the District seek summary judgment on these claims.  Coy

4    denies that she violated DP's constitutional rights, and argues that she is entitled to qualified

5    immunity even if she did.  The District claims that even if a constitutional violation occurred, it

6    had no deliberately indifferent policy that caused the violation.

7    Viewed in the light most favorable to the Plaintiffs, the evidence establishes that

8    constitutional violations occurred.  The Defendants are not entitled to qualified immunity on

9    these claims.  Accordingly, Defendants' Motion for Summary Judgment is DENIED as to these

10   claims.

11   Plaintiffs also seek a declaratory judgment that the Defendants' use of the safe room with

12   D.P. (and other similarly situated students) is unconstitutional.  Defendants argue that this claim

13   is moot because D.P. is no longer a student at any District school using a safe room.  Because the

14   District voluntarily ceased using the room, this claim is not moot.  Defendants' Motion for

15   Summary Judgment is DENIED as to this claim.  The Court's resolution of the Plaintiffs'

16   remaining claims is discussed below.

17                                          **I.       FACTS**

18   D.P. is a minor child diagnosed with oral motor apraxia[1] and autism.  D.P. was enrolled

19   at Artondale Elementary School within the Peninsula School District during the 2003/2004

20   school year. He was assigned to a Transition Program for children with special needs.  Jodi Coy

21   was D.P.'s teacher.  She employed a "safe room" about the size of a closet to contain students

22   who became "overly stimulated."

23   _____

24   [1] Oral motor apraxia adversely affects coordination of the jaw, lips, and tongue.

1      The Paynes met with Jodi Coy on September 24, 2003 to discuss D.P.'s Individual

2   Education Program (IEP) and Behavior Assessment Plan.  Ms. Coy suggested that she use the

3   isolation room to control D.P.'s disruptive behavior.  Though the Paynes initially objected, they

4   eventually authorized Coy to use the safe room, on condition that it not be used for punishment,

5   that the door remain open, and that someone remain inside the room to supervise D.P.

6      The Paynes allege that Ms. Coy did not utilize the safe room as agreed, but instead locked

7   D.P. inside unsupervised for indeterminate periods of time in order to punish or "break" D.P. of

8   his bad behavior.  Plaintiffs claim the isolation room was dark and poorly ventilated, and that

9   Coy often locked the door or wedged it shut with a chair, and that she covered the room's small

10  window with black construction paper.

11     Defendants claim that the safe room is well-lit and properly ventilated.  They argue Coy

12  used the room to calm down aggressive and over-stimulated students, and only placed students in

13  the room for a few minutes at a time.

14     The Paynes also contend that Ms. Coy put D.P. into the safe room even before their

15  initial meeting with her.  They also allege that Coy physically carried D.P. into the safe room.

16  While he was in the safe room, D.P. often removed his clothes, urinated, or defecated.  Ms. Coy

17  did not consistently document her use of the safe room in a "time out log."  The Paynes claim

18  they complained to Coy about her use of the room but she did not stop using it on their son.

19     As early as September 2003, D.P. began to exhibit what Windy Payne interpreted as

20  signs of agitation, such as chewing holes in his clothes and experiencing night terrors.  These

21  behaviors increased over the next three months, and Windy Payne began researching and

22  consulting others on appropriate usage of aversive therapy techniques (including the use of safe

23  rooms) with autistic children.

24

1    The District removed the safe room's door in January 2004.  At around the same time,

2    Windy Payne asked to meet with Coy to discuss D.P.'s IEP.  Plaintiffs allege that, after this

3    meeting, Coy prohibited the Paynes from coming to the classroom to pick up D.P.

4    The Paynes began homeschooling D.P at the end of the 2003/2004 school year.  The

5    Paynes mediated with the District in May, 2004, and the parties agreed that D.P. would transfer

6    to Harbor Heights, another District elementary school, for the 2004/2005 school year.

7    In 2005, Plaintiffs sued the District, its superintendent, the school, and the teacher for the

8    use of the safe room on D.P.  They asserted §1983 claims for violations of their Fourth, Eighth,

9    and Fourteenth Amendment rights.[2]  They also asserted state common law claims for negligence

10   and outrage. The Paynes' claims are based on the District's alleged failure to outline formal

11   policies or procedures regarding the use of the safe room.  They also claim that the District failed

12   to properly train Coy and that she did not have the appropriate teaching credentials.

13   In 2007, this Court granted Defendant's motion for summary judgment, determining that

14   the Plaintiffs' failure to exhaust their administrative remedies under the Individuals with

15   Disabilities Education Act (IDEA) deprived it of subject matter jurisdiction.  The Ninth Circuit

16   panel affirmed, and then the Ninth Circuit  re-heard the case *en banc*.  It overruled its prior

17   holdings and held that (1) IDEA's exhaustion requirement is not jurisdictional, and (2) non-

18   IDEA federal and state-law claims are not subject to the IDEA's exhaustion requirement.  *Payne*

19

20   _____

21   [2] Plaintiffs have since agreed to dismiss Coolican, the District's superintendent, in his
     individual capacity.  Any remaining claims against Coolican in his official capacity are
     subsumed by the *Monell* claims against the District.

22   Additionally, Defendants seek dismissal of Plaintiffs' claims against the school itself, and
     Plaintiffs do not oppose that Motion.  Accordingly, the claims against Artondale Elementary are

23   dismissed.

     Plaintiffs withdrew their Eighth Amendment claims in their Amended Complaint (Dkt.

24   #106).

1  *v. Peninsula Sch. Dist.,* 653 F.3d 863, 865 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 1540 (U.S.

2  2012).  It affirmed this Court's dismissal of the Plaintiffs' IDEA-based §1983 claim, reversed the

3  dismissal of the other §1983 claims, and remanded the case to this Court for consideration under

4  the new standard.[3]

5       Defendants now seek summary judgment on Plaintiffs' remaining claims.  Each will be

6  discussed in turn.

7                              **II.     DISCUSSION**

8       **A. Summary Judgment Standard**

9       Summary judgment is appropriate when, viewing the facts in the light most favorable to

10  the nonmoving party, there is no genuine issue of material fact which would preclude summary

11  judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to

12  summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to

13  interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for

14  _____

15       [3] Under the new relief-centered test , the IDEA requires exhaustion when:
         (1) A plaintiff seeks an IDEA remedy or its functional equivalent,

16       (2) A plaintiff seeks prospective injunctive relief to alter an IEP or the educational
    placement of a disabled student, or

17       (3) A plaintiff seeks to enforce rights that arise as a result of a denial of a free appropriate

18  public education (FAPE), whether pled as an IDEA claim, or any other claim based on the denial
    of FAPE.

         *Payne v. Peninsula Sch. Dist.,* 653 F.3d 863, 875 (9th Cir. 2011) *cert. denied,* 132 S. Ct.

19  1540, 182 L. Ed. 2d 161 (U.S. 2012).

         In determining whether Plaintiffs' declaratory relief claim is barred by the IDEA's

20  exhaustion requirement, the Court asks whether Plaintiffs are seeking to enforce rights that arise
    as a result of a denial of FAPE, or whether they are seeking to enforce rights protected by other

21  laws.

         Here, Plaintiffs seek a declaration that the use of the safe room deprived D.P. of his

22  constitutional rights..  Whether the safe room was used in accordance with D.P.'s IEP (and
    therefore was not a denial of FAPE) is not relevant to the determination of whether the use of the

23  safe room was constitutional.  Therefore, the Plaintiff's claim for declaratory relief is not barred
    by the IDEA's exhaustion requirement.

24

1    trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of

2    evidence in support of the non-moving party's position is not sufficient."  *Triton Energy Corp. v.*

3    *Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not

4    affect the outcome of the suit are irrelevant to the consideration of a motion for summary

5    judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words,

6    "summary judgment should be granted where the nonmoving party fails to offer evidence from

7    which a reasonable [fact finder] could return a [decision] in its favor."  *Triton Energy*, 68 F.3d at

8    1220.

9        **B.  Plaintiff's Declaratory Judgment Claim Is Not Moot.**

10       Plaintiffs ask the Court to declare that Defendants' use of the isolation room with D.P. is

11   unconstitutional.  Defendants argue that this claim is moot because D.P. is no longer a student at

12   any District school using a safe room.

13       Article III of the Constitution gives district courts authority to review only those cases in

14   which there is a live case or controversy.  *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S. Ct.

15   1704, 1706, 40 L. Ed. 2d 164 (1974).  A suit is moot when subsequent events resolve the

16   controversy. <u>*Church of Scientology of California v. United States*</u>, 506 U.S. 9, 12, 113 S. Ct. 447,

17   449, 121 L. Ed. 2d 313 (1992).  A claim is not moot if the defendant has voluntarily ceased the

18   activity at issue, but nothing prevents him from resuming it in the future.  Voluntary cessation

19   moots a case only if it is "absolutely clear the allegedly wrongful behavior could not reasonably

20   be expected to recur."  *Friends of the Earth, Inc. v. Laidlaw,* 528 U.S. 167, 170, 173, 179 (2000).

21       Coy removed the door to the safe room in January 2004, and soon after stopped using it

22   altogether.  (W. Payne dep., Dkt. #133, at 145:18-21).  Harbor Heights similarly removed the

23

24

door from their safe room classroom at Windy Payne's request.  As of June 13, 2013, D.P. was a junior at the District's Peninsula High School.

The District's decision to stop using safe rooms was purely voluntary.  There is nothing preventing Peninsula High School or any other district school from using a safe room to deal with D.P. in the future.  It is therefore "not absolutely clear" that this conduct will not recur.  *Doe v. Madison Sch. Dist. No. 321,* 177 F.3d 789, 799 (9th Cir. 1999).  Plaintiffs' declaratory judgment claim is not moot, and Defendants' Motion for Summary Judgment on that claim s is DENIED.

### C.  Coy is not entitled to Qualified Immunity

Plaintiffs' core claim is that Coy's use of the safe room violated D.P.'s Fourth and Fourteenth Amendment rights.  Coy denies that she violated D.P.'s constitutional rights, and argues that she is entitled to qualified immunity even if she did.  Plaintiffs argue that Coy knowingly violated D.P.'s clearly-established rights and is not entitled to qualified immunity.

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A two-part test resolves claims of qualified immunity by determining whether plaintiffs have alleged facts that "make out a violation of a constitutional right," and if so, whether the "right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 553 U.S. 223, 232 (2009). If the answer to either question is "no," the official cannot be held liable for damages. *See Saucier v. Katz,* 533 U.S. at 200–01.

1   Plaintiff asserts two separate constitutional claims, and Coy claims qualified immunity on

2   each.

3   ### 1.   Jodi Coy's Conduct Violated Plaintiff's Fourth Amendment Rights

4   The first inquiry, then, is whether, when viewed in the light most favorable to the

5   Plaintiffs, the evidence supports Plaintiffs' claim that Coy's use of the safe room violated his

6   Fourth Amendment  rights.

7   It is well-established that students do not "shed their constitutional rights at the

8   schoolhouse door." *Goss v. Lopez,* 419 U.S. 565, 574, 95 S. Ct. 729, 736, 42 L. Ed. 2d 725

9   (1975).  School officials are subject to the limitations of the federal constitution.  *P.B. v. Koch,*

10  96 F.3d 1298, 1302–03 (9th Cir.1996).  Students retain their Fourth Amendment right to be free

11  from unreasonable searches and seizures in the school context, though the scope of the right is

12  limited somewhat by the school's "custodial and tutelary responsibility for children." *Vernonia*

13  *Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656, 115 S. Ct. 2386, 2392, 132 L. Ed. 2d 564 (1995);

14  *New Jersey v. T.L.O.,* 469 U.S. 325, 334, 105 S. Ct. 733, 738, 83 L. Ed. 2d 720 (1985).

15   In 1989, the Supreme Court held that the Fourth Amendment's protection against

16  unreasonable search and seizure encompassed the protection against excessive force, since the

17  reasonableness of a search or seizure "depends not only on *when* it is made, but also on *how* it is

18  carried out." *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443

19  (U.S.N.C. 1989).  While the ruling in *Graham* was limited to the criminal context, in 2003 the

20  Ninth Circuit affirmed that the Fourth Amendment right to be free from excessive force equally

21  applies to students in the school context.  *Doe ex rel. Doe,* 334 F.3d at 909.  The Court in *Doe*

22  recognized that a student's right to be free from excessive force was clearly established since

23

24

1990. *Doe ex rel. Doe v. Hawaii Dep't of Educ.,* 334 F.3d 906, 910 (9th Cir. 2003) (citing *P.B. v.*

*Koch,* 96 F.3d 1298, 1299 (9th Cir. 1996)).

In light of the custodial and tutelary responsibilities school officials have toward their

students, a seizure violates a student's Fourth Amendment right if it is objectively unreasonable

under the circumstances, taking into account educational objectives as well as particularities of

the student such as age and sex. *Doe ex rel. Doe,* 334 F.3d at 909; *New Jersey v. T.L.O.,* 469 U.S.

at 342.

Viewed in the light most favorable to the Plaintiffs, the evidence establishes that Coy

locked a seven year old autistic child in a small enclosed, dark room for indeterminate periods of

time, and that she did so for an improper purpose.   A jury could find that he urinated and

defecated in the room, and that the use and condition of the room violated his constitutional

rights.

The answer to the first prong of the qualified immunity inquiry on the Plaintiffs' Fourth

Amendment claim is "yes."

### 2.   D.P.'s Fourth Amendment right was clearly established.

The second prong of the qualified immunity test asks whether the constitutional right was

clearly established.  If it was not, the official is immune, even if she did violate the plaintiffs'

rights.   *See Saucier v. Katz,* 533 U.S. at 200–01.  For a constitutional right to be clearly

established, "[t]he contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640

(1987).

Qualified immunity protects officials "who act in ways they reasonably believe to be

lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011).  The reasonableness

1   inquiry is objective, evaluating 'whether the [officials'] actions are 'objectively reasonable' in

2   light of the facts and circumstances confronting them, without regard to their underlying intent or

3   motivation.'" *Huff v. City of Burbank*, 632 F.3d 539, 549 (9th Cir. 2011) (quoting *Graham v.*

4   *Connor*, 490 U.S. 386, 397 (1989)).  Officials are protected from reasonable legal mistakes.

5   *Saucier*, 533 U.S. at 205.  Qualified immunity "shields an officer from suit when she makes a

6   decision that, even if constitutionally deficient, reasonably misapprehends the law governing the

7   circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  Qualified

8   immunity "gives ample room for mistaken judgments" and protects "all but the plainly

9   incompetent." *Hunter v. Bryant*, 502 U.S. 224 (1991).

10          In evaluating whether a right is clearly established, courts look to the state of the law at

11   the time of the incident in question. *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.,* 654

12   F.3d 975, 986 (9th Cir. 2011) *cert. denied,* 132 S. Ct. 1566, 182 L. Ed. 2d 168 (U.S. 2012)

13   (citing *Bryan v. MacPherson,* 630 F.3d 805, 832 (9th Cir.2010)).  *Saucier* emphasized that courts

14   should look at the specific facts, and not rely on broad general principles. *Saucier,* 533 U.S. at

15   206.  Courts "do not require a case directly on point, but existing precedent must have placed the

16   statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 131 S. Ct. 2074, 2083,

17   179 L. Ed. 2d 1149 (2011).

18          It is generally clear that using too much force is not constitutional, and it is true in the

19   context of students and particularly small, autistic students.  Coy is not entitled to qualified

20   immunity from the Plaintiffs' Fourth Amendment claims.

21

22

23

24

### 3.   Fourteenth Amendment Substantive Due Process Claim

Plaintiffs' second constitutional claim is that Coy's use of the safe room violated D.P.'s Fourteenth Amendment substantive due process rights, specifically when she used it to discipline him.

School discipline implicates a student's substantive due process right. *Ingraham v. Wright,* 430 U.S. 651, 674, 97 S. Ct. 1401, 1414, 51 L. Ed. 2d 711 (1977).  In determining whether a school official violated a student's Fourteenth Amendment rights, courts apply the "shocks the conscience" test. *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1180 (9th Cir. 2007) (citing *Rochin v. California,* 342 U.S. 165, 175, 72 S. Ct. 205, 211, 96 L. Ed. 183 (1952)).  Discipline that "shocks the conscience, offends a sense of justice or runs counter to the decencies of civilized conduct" violates the student's substantive due process right. *Rochin,* 342 U.S. at 175.

Plaintiffs support their claim that Coy violated D.P.'s substantive due process right by pointing to evidence that Coy locked him in the safe room until he defecated, and then made him clean up his own feces as a form of punishment intended to cause him harm.   A reasonable trier of fact could find this conduct shocking to the conscience.

The answer to the first prong of the qualified immunity inquiry on the Plaintiffs' Fourteenth Amendment claim is "yes."

### 4.   D.P.'s Fourteenth Amendment Right was Clearly Established

The question, then, is wheter it would have been clear to a reasonable official that her conduct amounted to a violation of D.P.'s rights.  Plaintiffs define the right as the right at issue as the right to be free from excessive force at the hands of school officials.  (See Dkt. #119 at 20).  Defendants argue for a much narrower definition, claiming that Plaintiffs must demonstrate

1   that "use of a time-out room with an autistic child who consistently disrupts class and threatens

2   other students and staff is unconstitutional." (*See* Dkt. #123 at 13).  They argue that the issue is

3   "whether there is a fundamental and clearly established right to defecate on public property

4   without cleaning it up." (Dkt. #113, at 21).   This would not be the question, even if the plaintiff

5   was not a seven year old autistic child.

6        Viewed in the light most favorable to the Plaintiffs, the use of the room as described

7   violated D.P.'s clearly established  Fourteenth Amendment rights.  Coy is not entitled to

8   qualified immunity on this claim, and the Motion for Summary Judgment on that basis is

9   DENIED.

10       **D.  *Monell* Claim against the District.**

11       Plaintiffs have also asserted a *Monell* claim against the District.  They claim  that the

12   District itself violated D.P.'s rights by failing to train and supervise Jodi Coy's use of "aversive

13   therapy."  Defendants contend the evidence does not support a finding that it had a policy,

14   practice or custom of deliberate indifference that caused any violation, and that the Monell claim

15   cannot survive as a matter of law.

16       Plaintiffs argue that a District policy can be inferred in four ways:  (1) Coy's use of the

17   room constituted a custom from which a policy may be inferred, (2) the District delegated their

18   policymaking authority to Coy by disclaiming authority over her, (3) the District's policymakers

19   ratified Coy's use of the room, or (4) the District had a custom of inadequate training that

20   amounted to deliberate indifference.

21            ***1.  Legal Standard***

22       A "municipality cannot be held liable under § 1983 on a respondeat superior theory."

23   *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  In order to establish a claim

24

against a municipality under § 1983, the plaintiff must show that he was deprived of his

constitutional rights and that this deprivation was proximately caused by an official policy,

custom or practice, that amounts to deliberate indifference.  *Monell v. Dep't of Soc. Serv. of New*

*York*, 436 U.S. 658, 690–91 (1978).

A plaintiff may establish municipal liability in three ways:  (1)  The plaintiff may

demonstrate that a city employee committed the alleged constitutional violation pursuant to a

formal governmental policy or a longstanding practice or custom which constitutes the "standard

operating procedure" of the local government entity. (2)  The plaintiff may establish that the

individual who committed the constitutional tort was an official with final policy-making

authority and that the challenged action itself thus constituted an action of official governmental

policy.  (3)  The plaintiff may prove that an official with final policy-making authority ratified a

subordinate's unconstitutional decision or action and the basis for it.  *Gillette v. Delmore*, 979

F.2d 1342, 1346–47 (9th Cir. 1992).

After demonstrating the existence of one of these circumstances, a plaintiff must also

show that the municipality's action was the cause of the constitutional deprivation.  *Trevino v.*

*Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  Further, when a plaintiff tries to use a single incident to

demonstrate municipal liability, that liability attaches "only when the decisionmaker possesses

'final authority' to establish municipal policy with respect to the action ordered."  *Collins v. City*

*of San Diego*, 841 F.2d 337, 341 (9th Cir. 1988) (citing *Pembaur v. City of Cincinnati*, 475 U.S.

469, 481 (1986)).  When alleging that a municipality *failed to act* to preserve a constitutional

right—as is the case here, in part—the failure must meet the deliberate indifference standard.

*City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Van Ort v. Estate of Stanewich*, 92 F.3d 831,

835 (9th Cir. 1996).

### 2. *Delegation*

Plaintiffs do not claim that the District had a formal policy regarding use of safe rooms, and it does not appear that the District did.  Instead, they claim that the District delegated to Coy the authority to make policy decisions concerning the use of the safe room by failing to have any such policy itself.

The determination of who has final policymaking authority is a question of law.  When a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies, and have not delegated the policy making authority to the employee.  *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S. Ct. 915 (1988).

Plaintiffs claim  (and demonstrate) that District officials failed to supervise Coy.  But it is not at all clear that this amounts to delegating to her the authority to make policy regarding the use of the safe room.

Under *Praprotnik*, it is true that constitutional evasions by municipalities should be sharply limited.  But the issue is whether Coy's disciplinary decisions—including the use of the safe room— were subject to review.  Even viewed in the light most favorable to the plaintiffs and even thought there is some confusion about the exact chain of command, the evidence establishes that Coy's decisions were subject to review, by at least the Principal, Weymiller, and a higher District official, Sarah Drinkwater.

As a matter of law, Plaintiffs have not demonstrated that the District delegated final policymaking authority to Coy regarding use of the safe room.

Defendants'' Motion for Summary Judgment on this specific claim is GRANTED.

### *3. Ratification*

Plaintiff's second *Monell* theory is that the District ratified Coy's decisions. Under *Praprotnik,* if the authorized policymakers approve a subordinate's decision and the basis for it, their ratification is chargeable to the municipality because their decision is final. *Praprotnik*, 485 U.S. at 127.  Plaintiffs have provided evidence that the District knew of and permitted Coy's use of the room over time—it was not a one time event.  This evidence supports a finding that District officials with policymaking authority had knowledge of Coy's usage of the safe room, and ratified her conduct.

The Motion for Summary Judgment on the *Monell* claim on this basis is DENIED.

### *4. Custom*

Municipal liability can also be established through showing  a "custom or usage of which the supervisor must have been aware." *Id.* at 121.  Custom is generally created through a bottom-up approach rather than a top-down affirmative decision.  It is shown through a final policymaker's tolerance of or acquiescence to a particular usage rather than his role in its creation or implementation. *Britton v. Maloney*, 901 F.Supp. 444, 450 (D. Mass. 1995).  A plaintiff can prove custom or usage by producing evidence of "repeated constitutional violations for which municipal officials were not discharged or reprimanded."  *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992).

Here, a reasonable trier of fact could find that municipal policymakers were aware of Coy's unconstitutional use of the safe room to the extent that her use constituted "custom" of which the District was aware and took no action to curb.

The Motion for Summary Judgment on the *Monell* claim on this basis is DENIED.

### 5. *Failure to Act*

Municipal liability can also be established by showing a policy of inadequate training or supervision that amounts to deliberate indifference.  *City of Canton*, 489 U.S. 378 (1989). Plaintiffs allege that the District's failure to train Coy amounted to deliberate indifference when considered in light of the obvious need for such training, and that this was the moving force behind the constitutional violations.

"[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees," and in regard to charges of deliberate indifference in hiring decisions, "the connection between the background of the particular applicant and the specific constitutional violation must be strong."  *Board of County Commissioners of Bryan County, Oklahoma v. Brown* 520 U.S. 397, 405 (1997); *Id* at 412. However, the Ninth Circuit has upheld a number of failure to train claims, including one based on a school district's failure to train teachers on harassment based on sexual orientation.  *Flores v. Morgan Hill Unified School District*, 324 F.3d 1130 (9th Cir. 2003).

In *Flores*, the Court found that training on this type of harassment was not extensive enough in light of the obvious need for more training.  *Id*. at 1136.  The Plaintiffs raise an almost identical claim here..  A rational jury could find that the District failed to adequately train Coy on aversive therapy techniques, that this failure amounted to deliberate indifference, and that it was the moving force behind constitutional violations.

The Motion to Dismiss the Plaintiff's *Monell* municipal liability claims against the District is DENIED.

**E.  Negligence Claims**

Plaintiffs assert state law negligence claims.  They argue that the Defendants owed (and violated) three duties: (1) the duty to exercise reasonable care to avoid from harming foreseeable plaintiffs, (2) the duty to exercise reasonable care in the hiring, training, and supervision of their employees and agents, and (3) the duty to use reasonable care in administering discipline to students, with whom they have a special relationship.

Defendants characterize Plaintiffs' negligence claims as "a claim for educational malpractice" and then demonstrate that any such claim is not actionable.  They also argue that because Coy was admittedly acting in the scope of her employment, the negligent training and supervision claims are redundant to the claim that Coy was negligent, and that such claims should be dismissed on that basis.

### 1.  The Plaintiffs have Identified a Duty

Defendants argue that liability cannot be based on foreseeablity alone, and that Plaintiffs have failed to identify a specific duty owed to either of them by any of the defendants.

A school district's duty to protect their students from reasonably anticipated dangers to students is well-established.  *Christensen v. Royal Sch. Dist. No. 160,* 156 Wash. 2d 62, 70, 124 P.3d 283, 287 (2005); *Niece v. Elmview Group Home,* 131 Wash.2d 39, 44, 929 P.2d 420 (1997). Specifically, a school district has a duty to protect its students from foreseeable harm by other students, teachers, and third parties.  *Peck v. Siau,* 65 Wash. App. 285, 293, 827 P.2d 1108, 1112 (1992).  A district is not liable simply because harm occurred— rather, liability exists where the harm was foreseeable.  Foreseeability depends on whether the particular harm falls "within the general field of danger covered by the specific duty owed by the defendant." *J.N. By & Through Hager v. Bellingham Sch. Dist. No. 501*, 74 Wash. App. 49, 57, 871 P.2d 1106, 1111 (1994)

1    (citing *Maltman v. Sauer,* 84 Wash.2d 975, 981, 530 P.2d 254 (1975).  Foreseeability is a

2    question for the trier of fact.  *Minahan v. W. Washington Fair Ass'n*, 117 Wash. App. 881, 897,

3    73 P.3d 1019, 1028 (2003).

4            Thus, Defendants' core basis for dismissing the negligence claims—the lack of an

5    identifiable duty—is legally incorrect.  A reasonable jury could find that the harms allegedly

6    suffered by D.P. were within the general field of danger covered by the District's duty to protect

7    its students, and that they were foreseeable.

8            Additionally, there is an issue of fact as to whether Coy was negligently hired.

9    Defendants argue that Coy was hired because the former teacher quit and they could not find a

10   certified teacher to take the position.  They argue that a claim for negligent hiring must fail

11   because Coy met all the state qualifications for being a 'teacher' at Artondale.  However, the

12   District's compliance with Washington state requirements for hiring depends on whether or not

13   they made a good faith effort to hire a candidate with a special education endorsement. (See Dkt

14   #30-7 at 39:16-19). The evidence puts this issue of material fact in dispute.

15           The Motion for Summary judgment on the Plaintiffs' negligence claims on this basis is

16   DENIED.

17                    ***2.   Negligent Training and Supervision Claim***

18           Plaintiffs claim that Coy was negligent in her use of the safe room and simultaneously

19   that the District was itself negligent in training and supervising her.  The Defendants concede

20   that Coy was acting within the scope of her employment but argue that that concession is a

21   defense to the negligent training and supervision claims as a matter law.

22

23

24

This claim is based on *La Plant v. Snohomish County,* 162 Wash. App. 476, 479, 271 P.3d 254, 256 (2011), which held that such a claim is superfluous or redundant when the employer concedes that the employee was acting within the scope of her employment:

> Under Washington law, therefore, a claim for negligent hiring, training, and supervision is generally improper when the employer concedes the employee's actions occurred within the course and scope of employment.

*La Plant*, 162 Wash.App. at 480

A different Judge in this court recently rejected this position, holding that "there is no doctrinal reason that employers cannot be liable for negligent supervision where its employees act negligently in the scope of their employment." *Traverso v. City of Enumclaw*, C11-1313RAJ, 2012 WL 2892021 (W.D. Wash. July 16, 2012).

It is true that a negligent supervision claim cannot succeed where the employee is not negligent, but that does not necessarily mean that an employer cannot negligently supervise an employee who is both negligent and acting in the scope of her employment.  The claim is perhaps redundant, but it will not affect the evidence or the trial.

The Motion for Summary Judgment on this basis is DENIED.

### 3.  *Plaintiffs Do Not Allege Educational Malpractice*

Defendants argue that Plaintiffs in effect assert a claim for educational malpractice, which is not a recognized cause of action.  However, Defendants mistakenly equate harm prevention with education.  Plaintiffs' negligence claims are not based on a denial of FAPE (and if they did, they would trigger the IDEA's exhaustion requirement).  Instead, Plaintiffs' claims center on the use of the isolation room as a punishment technique.  "Public school teachers and administrators are privileged at common law to inflict only such corporal punishment as is reasonably necessary for the proper education and discipline of the child; any punishment going

beyond the privilege may result in both civil and criminal liability." *Ingraham v. Wright,* 430 U.S. 651, 670, 97 S. Ct. 1401, 1412, 51 L. Ed. 2d 711 (1977).  Additionally, schools have a clear duty to protect its students from reasonably anticipated dangers. *Christensen v. Royal Sch. Dist. No. 160,* 156 Wash. 2d 62, 70, 124 P.3d 283, 287 (2005); *Niece v. Elmview Group Home,* 131 Wash.2d 39, 44, 929 P.2d 420 (1997).  Plaintiffs' negligence claims are actionable under state common law.

The Motion for Summary Judgment on this basis is DENIED.

### 4. *Windy Payne's Negligent Infliction Of Emotional Distress Is Dismissed*

Defendants seek summary judgment on Windy Payne's claim for negligent infliction of emotional distress (NIED) based on insufficient evidence.  It is unclear from Plaintiffs' First Amended Complaint (Dkt. #106) whether they even allege mental, emotional, and cognitive damages on behalf of Windy Payne, or whether those claims are asserted solely on behalf of D.P. Plaintiffs do not refute Defendants' allegations of insufficient evidence to support the claim on behalf of the Plaintiff mother.  Even viewed in the light most favorable to the Plaintiffs, the evidence does not support Windy Payne's NIED claim.

Defendants' Motion for Summary Judgment on that claim is GRANTED and the claim is DISMISSED.

### F.  Outrage Claim

Defendants seek summary judgment on Plaintiffs' outrage claim, claiming that they have failed to present sufficient evidence of outrageous conduct, or of emotional distress caused by any such conduct. Plaintiffs argue that they have presented sufficient evidence to create a genuine issue of material fact.  The tort of outrage requires a plaintiff to prove (1) extreme or

1    outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual

2    emotional distress. *Kloepfel v. Bokor*, 149 Wn.2d 192, 194 (2003).

3           This Order has already discussed the existence of the first two elements in connection

4    with the Plaintiffs' Fourteenth Amendment claim, above.  The third is clearly present for D.P.

5    W.P. has not presented evidence of her own distress to survive summary judgment on this claim,

6    as was the case with her NIED claim.

7           The Motion for Summary Judgment on this claim is DENIED as to D.P. and GRANTED

8    as to W.P.

9

10                              **III.     CONCLUSION**

11          Defendants' Motion for Summary Judgment on Plaintiffs' claim that the District

12   delegated policy making authority to Coy is GRANTED.  Defendants' Motion for Summary

13   Judgment on Plaintiff W.P.'s negligent infliction of emotional distress and outrage claims is

14   GRANTED.  The remainder of the Motion is DENIED.

15          IT IS SO ORDERED.

16          Dated this 30th day of August, 2013.

17

18                              _____
                                RONALD B. LEIGHTON
19                              UNITED STATES DISTRICT JUDGE

20

21

22

23

24

ORDER - 21